# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s)**: _____    Caption [use short title] _____

**Motion for:** _____

Set forth below precise, complete statement of relief sought:

_____
_____
_____
_____
_____

**MOVING PARTY:** _____    **OPPOSING PARTY:** _____
☐ Plaintiff    ☐ Defendant
☐ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** _____    **OPPOSING ATTORNEY**: _____
[name of attorney, with firm, address, phone number and e-mail]

_____
_____
_____

Court-Judge/Agency appealed from: _____

**Please check appropriate boxes:**   **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):    Has request for relief been made below?    ☐ Yes  ☐ No
☐ Yes ☐ No (explain): _____    Has this relief been previously sought in this Court?    ☐ Yes  ☐ No
                                                    Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☐ Don't Know

Is oral argument on motion requested?    ☐ Yes  ☐ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☐ Yes  ☐ No  If yes, enter date:_____

**Signature of Moving Attorney:**
_____ **Date:** _____    Has service been effected?  ☐ Yes  ☐ No  [Attach proof of service]

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

                                    **FOR THE COURT:**
                                    CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

**Form T-1080**

# 13-772

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



IN RE HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE,

Petitioners.

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(NO: 11-CV-0691-LAK)

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD ON PETITION FOR WRIT OF MANDAMUS

JAMES E. TYRRELL, JR.
PATTON BOGGS LLP
1185 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
(646) 557-5100

– AND –

ONE RIVERFRONT PLAZA, 6TH FLOOR
NEWARK, NEW JERSEY 07102
(973) 848-5600

*Attorneys for Petitioners Hugo Gerardo Camacho Naranjo
and Javier Piaguaje Payaguaje*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................1

CONCLUSION ....................................................................................................9

## INTRODUCTION

Before the Court is an expedited Petition for a Writ of Mandamus ordering the lower court's compliance with an Opinion and Mandate, at the heart of which is the fundamental conclusion that Petitioners Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje ("Petitioners"), foreign judgment creditors, cannot be compelled to litigate the enforceability of their Ecuadorian judgment in the preferred forum of their judgment debtor, Chevron Corporation ("Chevron"). Petitioners hereby seek permission to supplement the record on this Petition concerning relevant events that have transpired below since the filing of the Petition on March 5, 2013.

## ARGUMENT

As set forth in the Petition, the lower court has, in two distinct ways, resurrected Chevron's foreign judgment "non-recognition" claim, which this Court ordered dismissed on the basis that a "debtor's-choice" enforcement policy would "provoke extensive friction between legal systems" and encourage judgment debtors to run to New York "to seek a res judicata advantage" to frustrate "potential enforcement efforts in other countries."  (*See* Dkt. 1-1 at 9 (*quoting Chevron Corp. v. Naranjo, et al.*, 667 F.3d 232 (2d Cir. 2012).)  One of the means by which the lower court has attempted to reclaim the power to adjudicate the enforceability of Petitioners' judgment—before any other court gets that chance—

1

is by interpreting Petitioners' boilerplate "collateral estoppel" defense as an invocation of their judgment, and thus an invitation to determine its enforceability.[1] (*Id*. at 9-10.) Plain as day is the fact that the lower court's conflating of Petitioners' generic defense was but a convenient pretext to end-run an Opinion and Mandate that chafed the lower court. The defense was interposed long before this Court was asked to weigh in on the viability of Chevron's non-recognition claim in *Naranjo*. But neither Chevron nor the lower court, neither prior to nor during the pendency of the *Naranjo* appeal, once suggested—despite all the sturm and drang over whether Chevron, as a judgment debtor, could dictate the forum for judgment enforcement—that the judgment creditors had *de facto* sought enforcement in New York by asserting collateral estoppel there.

Chevron has urged this Court to "punt" on the grounds that it is not yet a certainty that the lower court will issue an edict on the enforceability of the judgment. (Dkt. 58-1 at 18.) To that end, the Court should be aware of two developments that post-date the Petition.

---

[1] The district court also, subsequent to this Court's Opinion and Mandate, created from thin air a claim to "set aside" the Ecuadorian judgment pursuant to its equitable powers and F.R.C.P. 60(d)—an ersatz "non-recognition" claim. (*Id*. at 10-11.) This claim is not found in Chevron's Complaint, and there exists no precedent suggesting that a judgment debtor may initiate a claim to "set aside" a *foreign* judgment. Every bit as much as Chevron's dismissed foreign judgment "non-recognition" claim, this new cause of action, if permitted to exist, would establish New York's courts as the "transnational arbiters" of the quality of all foreign judgments. *Naranjo*, 667 F.3d at 243.

2

First, on April 3, 2013, in an effort to reign in out-of-control proceedings, Petitioners moved to strike on relevance grounds some of the reports authored by the 35 persons appearing on Chevron's expert witnesses list. (Declaration of James E. Tyrrell, Jr., dated May 23, 2013 ("Tyrrell Decl."), Ex. 1.) Among these, Petitioners sought to exclude four expert reports speaking to whether the Ecuadorian judgment is entitled to international recognition, arguing that this Court already found that question to be outside the lower court's purview. (*Id*. at 4.) The district court denied Petitioners' request, reiterating that foreign judgment recognition "remain[s] in this case by virtue of [Petitioners'] affirmative defenses of collateral estoppel . . . ." (Tyrrell Decl., Ex. 2 at 2.)

Second, on May 3, 2013 Chevron moved for a protective order to preclude Petitioners from examining a Chevron Fed. R. Civ. P. 30(b)(6) witness on topics "relating to the Texaco merger and Chevron's corporate structure" on the grounds that such matters "have no possible relevance." (Tyrrell Decl., Ex. 3 at 5.) The lower court disagreed with Chevron's non-relevance assessment, observing that successorship-related questions are relevant to "whether certain statements made by Texaco as to the adequacy of the Ecuadorian courts in the context of seeking dismissal of the *Aguinda* case on the ground of *forum non conveniens* are admissible against or binding on Chevron on the question *whether the Ecuadorian legal system meets the standard essential to recognition of the Judgment*." (Tyrrell

3

Decl., Ex. 4 at 2-3 (emphasis added).) Indeed, the Court reiterated yet again that the question of "whether the [Ecuadorian] Judgment . . . is entitled to recognition, enforceability, or preclusive effect outside of Ecuador. . . . is before this Court by virtue of the defendants' assertion of collateral estoppel based on the Judgment."[2] (*Id*. at 2.)

Under these circumstances, Chevron's recommendation that this Court stand down in light of supposed uncertainty about whether the lower court will rule on enforceability rings hollow. Chevron's recommendation, in fact, confuses the issue entirely. The lower court contravened the letter and spirit of this Court's Mandate by re-injecting the issue of foreign judgment enforceability into the case—regardless of how, or even whether, the lower court ultimately disposes of that issue.

---

[2] Further evidencing its disregard for this Court's precedent, the lower court found a reason to deny Petitioners an opportunity to question Chevron's 30(b)(6) witness regarding the Chevron/Texaco merger—notwithstanding its conclusion that the Texaco/Chevron merger is technically relevant. The lower court found that any attempt by Petitioners to impute to Chevron the representations that Texaco made about the quality of the Ecuadorian judiciary as a means of securing its *forum non conveniens* dismissal in *Aguinda* would "take a bridge too far." (*Id*. at 3-4.) This, despite the fact that this Court previously has ruled that Chevron is accountable for the representations made by Texaco to secure dismissal of *Aguinda*. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 389-90 n.3, n.4 (2d. Cir. 2011) (holding that Texaco's statements are "enforceable against Chevron in this action and any future proceedings between the parties" because Chevron had "appeared in [the Second Circuit] and reaffirmed the concessions that Texaco had made in order to secure dismissal of" *Aguinda*).

4

Still, Petitioners would be remiss if we did not also make the Court aware that the lower court recently denied Chevron's motion for partial summary judgment on Petitioners' collateral estoppel defense. But far from counseling against a ruling on the merits of this Petition, the circumstances surrounding this fleeting reprieve from Chevron's summary judgment motion reinforce Petitioners' urgent need for relief. To wit, citing their dwindling capacity to keep up with Chevron's and the lower court's frenzied pace, Petitioners' then-counsel (and then-counsel for Steven Donziger[3]) had quite literally begged the lower court to adjourn Chevron's summary judgment motion—Chevron's third such motion since the case resumed after this Court's issuance of the *Naranjo* Opinion and Mandate—until after the close of discovery. (Tyrrell Decl., Ex. 5; *see also* Ex. 6.) The lower court dismissed their pleas out of hand the next day. (Tyrrell Decl., Ex. 7.) Then, *after* counsel spent many hundreds if not thousands of hours preparing their response to Chevron's massive summary judgment motion, the Court, in a four-sentence order, denied the motion "without prejudice and *with leave to renew after the close of the discovery period*"—which is set to occur in mid-June, 2013. (Tyrrell Decl., Ex. 8 (emphasis added).)

Ten days later, citing, *inter alia*, the lower court's costly and apparently intentional mismanagement of Chevron's vexatious summary judgment motions,

---

[3] Mr. Donziger, Petitioners' co-defendant in the proceedings below, has requested leave to file a joinder in these proceedings. (*See* Dkt. 44.)

both Petitioners' and Donziger's lead counsel of record applied for leave to withdraw from the case.  (*See* Tyrrell Decl., Exs. 9 & 10.)  Noting that Donziger was over $1.4 million in arrears, Donziger's counsel observed that, "[e]ncouraged by [the lower court's] implacable hostility to Donziger, Chevron will file any motion, however meritless, in the hope that the Court will use it to hurt Donziger.  Donziger does not have the resources to defend against Chevron's motion strategy, and his counsel should not be made to work for free to resist it."  (Tyrrell Decl., Ex. 9 at 5-8.)  Petitioners' counsel attested to the fact that "Chevron's efforts to scare off funders by suing or subpoenaing persons and entities that have contributed funds to the case" and to "bulldoze a result using its limitless financial resources to win a self-created war of attrition in New York" had caused Petitioners to be $1.8 million in arrears.[4]  (Tyrrell Decl., Ex. 10 at 3-4.)

In addition to permitting Chevron to inundate Petitioners and Donziger with a steady stream of premature summary judgment motions, counsel emphasized the many ways in which the district court has actively made their situation untenable.  (*See, e.g.*, Tyrrell Decl., Ex. 9 at 5-8.)  Two of the district court's recent decisions

---

[4] Neither of these respected firms are novices when it comes to pitched courtroom battles.  Lest Chevron claim that they were fleeing on account of the increasingly fevered tenor of Chevron's allegations, both were adamant that they would be proud to continue were their clients remotely able to keep pace with the absurd financial demands of the case.  (*See* Tyrrell Decl., Exs. 11 at 2 & 12 at 2.)

6

stand out for their obvious direct, financial impact on counsel's ability to continue representing Petitioners and Donziger.

First, as described in the Petition (*see* Dkt. 1-1 at 41-42) as well as in Petitioner's motion to expedite consideration thereof (*see* Dkt. 52-1 at 14 n. 9), Chevron has asked the lower court to impose sanctions because U.S. lawyers cannot compel Ecuadorian counsel to turn over documents located in Ecuador in violation of Ecuadorian law, and in contravention of an Ecuadorian court order. The lower court *sua sponte* ordered a three-day evidentiary hearing on this motion—requiring many more days of preparation on the part of counsel. (*See* Tyrrell Decl., Exs. 14 & 15.) The hearing was surreal. Privilege was liberally brushed aside, as two lawyers from Petitioners' lead firm, Smyser, Kaplan and Veselka LLP, as well as Donziger, were collectively subjected to hours of grilling by Chevron's counsel. (*See id*.) An attorney from Patton Boggs, counsel to Petitioners here and a so-called "non-party co-conspirator" vis à vis the proceedings below, also was ordered to appear, but ultimately was not called to testify. In addition, Petitioner Javier Piaguaje was compelled to travel all the way from the Ecuadorian jungle to appear, and did indeed testify.

Second, the lower court, at Chevron's request, appointed not one but two special masters to preside over depositions. (Tyrrell Decl. Ex. 16.) Despite the fact that only Chevron desired their services, the lower court refused even to

7

allocate the majority of the special masters' fees to Chevron in the first instance, instead forcing Petitioners and Donziger to front half of the tab. (*See* Tyrrell Decl., Ex. 16.) Petitioners and Donziger would be required to compensate the special masters at a rate of $700 per hour, and one associate of their choosing at the rate of $630 per hour, for their work preparing for and presiding over the depositions, including time spent conducting legal research. (*See* Tyrrell Decl., Exs. 16, 13, & 22.) Petitioners and Donziger would also be required to cover the special masters' expenses, including travel, meals, and lodging with respect to depositions held in far-flung locations like Lima, Peru. (*See id.*) When Petitioner's and Donziger's counsel protested that the arrangement would unfairly serve Chevron's goal of bleeding its adversaries dry, and argued that they could not afford to pay (Tyrrell Decl., Exs. 17, 18, & 19), the lower court warned in a hand-written memo-endorsement that counsel were "proceed[ing] at their own risk."[5] (Tyrrell Decl., Ex 19 at 2.)

Notwithstanding these hardships, it appeared that the lower court might at a minimum keep counsel in the case until after the close of discovery. (Tyrrell

---

[5] The lower court insisted on appointing Max Gitter as one of the special masters, over Mr. Donziger's ardent protests. (Tyrrell Decl., Exs. 16 & 17.) Mr. Gitter previously presided over Donziger's mind-boggling, 16-day 28 U.S.C. § 1782 deposition, whereby Mr. Gitter frequently questioned Donziger with more fervor than Chevron's counsel, and manipulated Mr. Donziger's answers to make them more favorable to Chevron, striking any disagreeable aspect of Donziger's responses. (*See, e.g.*, Dkt. 40-5 at 149-150.)

8

Decl., Ex. 20.) But on May 17, 2013, the district court granted both motions to withdraw, effective immediately.[6] (Tyrrell Decl., Ex 21.) Petitioners now find themselves represented by a solo practitioner facing the third-largest American company. Donziger is *pro se*. If this case is to continue, it deserves proper stewardship.

## CONCLUSION

Petitioners respectfully renew their request for a Writ of Mandamus and for reassignment to another district judge, and ask that all of the foregoing be considered in connection therewith.

Dated: May 23, 2013　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*s/ James E. Tyrrell, Jr.*
　　　　　　　　　　　　　　　　　　　　　James E. Tyrrell, Jr.
　　　　　　　　　　　　　　　　　　　　　PATTON BOGGS LLP

---

[6] Although Chevron did not oppose the motion for withdrawal, the Court used the opportunity to take a final parting shot at counsel, in an opinion suggesting that there is some semblance of equity in the proceedings below. By way of example, the lower court lauded its order "barring letters to the Court, the volume of which was an undue burden to all concerned in this case." (*Id*. at 3.) The lower court fails to note that it did so only five weeks ago. (*See* Tyrrell Decl., Ex. 23.) Petitioners have for months if not years complained about Chevron's incessant letter-writing campaign, which placed Petitioners in the position of constantly responding to *de facto* motions, improper sur-replies, requests for advisement, updates, and the like. (*See, e.g.,* Tyrrell Decl., Ex. 24 & 25.) The Court refused to do anything about it—until, that is, Petitioners themselves sent a multiple letters to the Court during the week of April 1, 2013, registering complaints concerning Chevron's entry into an unlawful settlement agreement with former defendant Stratus Consulting, which imposes a gag on Stratus unless Chevron commands it to testify. (*See* Tyrrell Decl., Exs. 26, 27 & 28.) Only then did the Court see fit to ban letters.

1185 Avenue of the Americas
30th Floor
New York, New York 10036

—and—

One Riverfront Plaza, 6th Floor
Newark, New Jersey 07012

*Attorneys for Petitioners Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*