# 13-772-cv

IN THE

## United States Court of Appeals

*for the*

## Second Circuit

IN RE HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE,
*Petitioners.*

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**RESPONDENT CHEVRON CORPORATION'S OPPOSITION TO
PETITIONERS HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE'S MOTION TO SUPPLEMENT THE
RECORD ON PETITION FOR WRIT OF MANDAMUS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Respondent
Chevron Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................2

    A.   The LAPs' "Update" Is Misleading on the "Mandate" Issue. ....................2

    B.   The Remainder of the LAPs' "Update" Is Irrelevant and Incomplete.........7

CONCLUSION .....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barrett v. U.S.*,
    105 F.3d 793 (2d Cir. 1996) ................................................................3

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
    769 F.2d 919 (2d Cir. 1985) ................................................................4

*Chevron Corp v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012) ..........................................................3, 5

*Chevron Corp. v. Page*,
    No. 11-cv-00395 (D. Md.) ................................................................7

*Chevron Corp. v. Salazar*,
    No. 11-3718 (LAK) (S.D.N.Y.) .........................................................2

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011) ..............................................................7

*In re Chevron Corp.*,
    No. 10-1146, 2010 WL 3584520 (S.D. Cal. Sept. 10, 2010) ...........7

*In re Chevron Corp.*,
    No. 10-2675, Dkt. 33 (D.N.J. June 11, 2010) ...................................7

*In re Chevron Corp.*,
    No. 11-24599, Dkt. 82 (S.D. Fla. June 12, 2012) ......................7, 13

*In re Chevron Corp.*,
    No. 11-cv-0395, Dkt. 56 (D. Md. Feb. 9, 2013) ..............................6

*In re Chevron Corp.*,
    Nos. 10-MC-21, 10-MC-22, Dkt. 77 (D.N.M. Sept. 2, 2010) ..........7

*In re Chevron Corp.*,
    Nos. 10-MC-27, 10-MC-28,
    2010 WL 3418394 (W.D.N.C. Aug. 30, 2010) ...............................7

*In re Naranjo*,
    No. 13-1382, Dkt. 27 (4th Cir. May 15, 2013) ................................6

*In re Traffic Executive Ass'n-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) ...................................................................11

*In re U.S. Dep't of Defense*,
    848 F.2d 232 (D.C. Cir. 1988) ...............................................................11

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ........................................................................6

*Phelan v. Middle States Oil Corp.*,
    156 F.2d 697 (2d Cir. 1946) ...................................................................11

*Salinger v. Random House, Inc.*,
    818 F.2d 252 (2d Cir. 1987) ......................................................................2

*SEC v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010) ......................................................................5

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990) ......................................................................5

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) ....................................................................2

*Wood v. F.B.I.*,
    432 F.3d 78 (2d Cir. 2005) ......................................................................11

### Statutes

28 U.S.C. § 1292(b) .......................................................................................6

### Rules

Fed. R. App. P. 21(b)(1) ...............................................................................3

Fed. R. Civ. P. 56(d) ....................................................................................4

Fed. R. Civ. P. 60(b) ....................................................................................6

## PRELIMINARY STATEMENT

Two business days before a panel of this Court is scheduled to receive the writ petition as a submitted matter, Petitioners Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "Lago Agrio Plaintiffs" or "LAPs") have moved to "supplement the record on this Petition concerning relevant events that have transpired below since the filing of the Petition." Dkt. 75-1 at 1.[1]  Chevron has not been called upon to submit an answer.  The LAPs devote much of their brief to rearguing their previous points and seeking to introduce a number of exhibits pre-dating their petition (*see* Dkts. 75-6, 75-7, 75-8, 75-25, 75-26) or their motion to expedite (*see* Dkts. 75-18, 75-19).  This repetition does not advance their cause, and they ignore or obscure those developments that actually bear on the core issue raised in their petition—namely, whether the district court violated this Court's mandate in *Chevron Corp v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) (which it did not).  Because the present motion appears intended principally to further criticize the district judge with unfounded complaints about case management decisions that cannot possibly form the basis for mandamus relief, it should be denied.

---

[1]    Except where otherwise indicated, "Dkt." references are to the docket in these proceedings.  "SDNY Dkt." references are to the docket in the proceedings below, *Chevron Corp. v. Donziger*, No. 11-cv-691 (S.D.N.Y.).

## ARGUMENT

### A.    The LAPs' "Update" Is Misleading on the "Mandate" Issue.

Supplementation of a record on appeal may be appropriate when new information "clarifies our understanding of the process by which the District Judge reached the decision challenged on appeal." *Salinger v. Random House, Inc.*, 818 F.2d 252, 253 (2d Cir. 1987) (per curiam).  Here, whatever relevant developments have transpired since the filing of the petition are either ignored or misdescribed.

The LAPs' petition relies on the so-called "mandate rule," which "requires a trial court to follow an appellate court's previous ruling on an issue *in the same case*." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (emphasis added).  But the LAPs' petition challenges orders that were all entered in Chevron's RICO and fraud action, *Donziger*, No. 11-cv-691 (LAK) (S.D.N.Y.), while *Naranjo* resolved only Chevron's separate and independent declaratory judgment action, *Salazar*, No. 11-cv-3718 (LAK) (S.D.N.Y.).  In *Naranjo*, this Court vacated a preliminary injunction and ordered dismissal of Chevron's declaratory judgment action.   667 F.3d at 247.  And upon remand, the district court immediately dismissed that case, fulfilling the mandate in full.  *See Chevron Corp. v. Salazar*, No. 11-3718 (LAK) (S.D.N.Y.), Dkt. 380.  In fact, the *Naranjo* court acknowledged the distinct nature of the two actions, explaining that its "resolution of the present appeal *completely disposes of the underlying action*, *leaving nothing further to be addressed on remand* with respect to the severed claim, notwithstanding the con-

2

tinuation of *separate proceedings* between these parties *on other causes of action* before the same district court judge." *Naranjo*, 667 F.3d at 239 n.11 (emphasis added).[2]

The only significant development bearing on the LAPs' argument about the supposed violation of the mandate rule concerns the Chevron motion seeking partial summary judgment as to liability and certain affirmative defenses (including collateral estoppel) and counterclaims, which was pending when the LAPs filed their petition in this Court.  SDNY Dkt. 744.  The LAPs featured this motion in their writ petition both as a ground for mandamus and reassignment (Dkt. 1 at 21, 35), and it was the focus of the LAPs' motion to expedite these proceedings (Dkt. 52-1), which the Court granted (Dkt. 65).  Nearly five weeks ago, the district court *denied* Chevron's motion (Dkt. 75-9), but the LAPs said nothing.  The LAPs are in fact "remiss" about having failed to inform the Court earlier.  Dkt. 75-1 at 5.  *Cf. Barrett v. U.S.*, 105 F.3d 793, 794 (2d Cir. 1996) (denying writ petition as moot).[3]

Despite the LAPs' favorable outcome on the summary judgment motion, the LAPs claim the district court is guilty of "intentional mismanagement" because it

---

[2]  *See also* Chevron's arguments, evidence, and authorities in its opposition to the LAPs' motion to expedite consideration of these proceedings, Dkt. 58-1, which included some relevant factual background (*id*. at 4-10) and an abbreviated discussion of the merits of the LAPs' petition (*id*. at 13-20).

[3]  Chevron could not bring this ruling to the Court's attention because the Court has not called for an answer to the petition.  *See* Fed. R. App. P. 21(b)(1); Dkt. 1-3.

denied the LAPs' letter-request for adjournment of the deadline for responding to

Chevron's partial summary judgment motion.  Dkt. 75-1 at 5.  But as the district

court explained in detail, when a party claims that it needs more time to respond to

a summary judgment motion, Federal Rule of Civil Procedure 56(d) "is the mecha-

nism for addressing that need."  Dkt. 75-8 at 2.  Rule 56(d) requires the party op-

posing summary judgment to show "by affidavit or declaration that, for specified

reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P.

56(d).  Because the LAPs' letter-brief did not comply with Rule 56(d), the district

court appropriately denied the request for "adjournment" of the response deadline.

Dkt. 75-8 at 2.  The court did, however, grant the LAPs and Donziger extensions of

time within which to respond to Chevron's motion, even after noting that "the is-

sues raised by this motion have been readily apparent to defendants for many

months and quite likely for well over a year." *Id*. at 3.  And even though Defend-

ants ultimately failed to satisfy the requirements of a Rule 56(d) continuance, *see*

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926

(2d Cir. 1985), the district court went out of its way to effectively grant their re-

quest by denying Chevron's motion without prejudice to renewal after the close of

discovery.  *See* Dkt. 75-9.

　　The remaining discussion that pertains to the purported violation of the

mandate rule is not an update at all, but just a rehashing of prior arguments that are

both baseless and insufficient for mandamus, since they are correctable on appeal.

*See SEC v. Rajaratnam*, 622 F.3d 159, 169 (2d Cir. 2010).  The motion criticizes the district court's July 2012 ruling interpreting the LAPs' "collateral estoppel" defense as an invocation of their fraudulent $18.2 billion Ecuadorian judgment (SDNY Dkt. 550).  However, to the extent the district court may eventually rule on whether the LAPs' Ecuadorian judgment is entitled to any preclusive effect under applicable federal or state principles of comity, that ruling would be consistent with *Naranjo*, which noted expressly the propriety of "[c]hallenges to the validity of foreign judgments" if the judgment creditor puts the judgment at issue "'in a pending action by . . . affirmative defense.'"  667 F.3d. at 241 (quoting N.Y. CPLR § 5303).

The LAPs themselves injected the issue into the litigation by asserting collateral estoppel and other affirmative defenses based on the Ecuadorian judgment. The court was well within its discretion to deny the LAPs' subsequent bad-faith attempt to withdraw these defenses when Chevron moved for summary judgment as gamesmanship and forum shopping.  *See*, *e.g.*, *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).[4]  Indeed, the LAPs

---

[4]   For example, the LAPs argued to this Court in *Naranjo* that because "Chevron litigated (and still is litigating) the same fraud claims in Ecuador . . . [p]rinciples of estoppel should preclude Chevron from re-litigating its fraud claims in the lower court." *Naranjo*, No. 11-1150, Dkt. 377 at 14 & n.33 (2d Cir. July 5, 2011); *see also id.*, Dkt. 629-1 at 18 (2d Cir. Jan. 13, 2012) (arguing that "Chevron . . . cannot prove that the Judgment was procured by fraud on the Ecuadorian Court because

continue to invoke the supposed preclusive effect of the Ecuadorian judgment in U.S. courts—most recently in the Fourth Circuit and the District of Maryland.[5] The LAPs have identified no other plausible basis for this defense.

Similarly, it is not true that the district court "created from thin air a claim to 'set aside' the Ecuadorian judgment." Dkt. 75-1 at 2 n.1. The LAPs mischaracterize the challenged order, which cited Federal Rule of Civil Procedure 60(b) as an example to illustrate why there was no need for an immediate appeal of a question that the LAPs proposed for 28 U.S.C. § 1292(b) certification—namely, the answer to the LAPs' proposed question was already well settled (SDNY Dkt. 707 at 8–16). *See* Dkt. 58-1 at 19–20. Thus, the district court had broad discretion to deny the LAPs' attempt to pursue an interlocutory appeal, *see Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24–25 (2d Cir. 1990), and that ruling had nothing to do with *Naranjo*.

---

all of Chevron's claims have been presented to and addressed by the Ecuadorian Trial and Appellate Courts").

[5] *See In re Naranjo*, No. 13-1382, Dkt. 27 at 21 n.38 (4th Cir. May 15, 2013) (arguing that "the Ecuadorian Appellate Court itself has considered Chevron's allegations concerning the 'ghostwriting of the Ecuadorian Judgment,' and concluded, *inter alia,* that 'the data that the first instance judge considered is in the record.'"); *In re Chevron Corp.*, No. 11-cv-0395, Dkt. 56 at 21 (D. Md. Feb. 9, 2013) (arguing that "the findings of the Ecuadorian Appellate Court rejecting Chevron's claims of ghostwriting of the Ecuadorian Judgment wholly contradicts and undermines the Magistrate Judge's decision with respect to Chevron's ghostwriting allegations."); *id.*, Dkt. 64 at 10 (D. Md. Mar. 12, 2013) (arguing that "the Ecuadorian Appellate Court, with its intimate knowledge of the detailed proprieties of Ecuadorian practice, was unimpressed [with Chevron's ghostwriting claims]").

**B.    The Remainder of the LAPs' "Update" Is Irrelevant and Incomplete.**

The LAPs purport to "update" this Court about a variety of "trial management" developments in the proceedings below, such as the district court's handling of various discovery disputes, a recent evidentiary hearing held on Chevron's motion for discovery sanctions, and Defendants' counsels' recent decision to withdraw from representing them in the district court.  But the LAPs distort those developments they choose to reveal, and ignore those to which they cannot respond.

While the LAPs pose as victims being overwhelmed by "might," they cannot dispute the mountain of evidence piling up against them, or the findings issued against them by numerous courts across the United States.  In particular, they cannot dispute that, as the District of Maryland recently found, "Chevron has shown to anyone with common sense that this [Ecuadorian judgment] is a blatant cut and paste exercise" from documents "internal to Ecuadorian Plaintiffs' counsel" that were illicitly "incorporated into [the] judgment."  Dkt. 58-3 (Jan. 25, 2013 H'rg Tr., *Chevron Corp. v. Page*, No. 11-cv-00395 (D. Md.)) at 57:13–24.[6]

---

[6]    In addition to the district court below, several other courts have now rejected the LAPs' narrative and found "mounds of evidence" suggesting that "the judgment itself was also ghostwritten."  *In re Chevron Corp.*, No. 11-24599, Dkt. 82 at 4 (S.D. Fla. June 12, 2012), *adopted*, Dkt. 128 (S.D. Fla. Feb. 27, 2013).  Other courts have also made crime-fraud rulings.  *See In re Chevron Corp.*, 633 F.3d 153, 166 (3d Cir. 2011); *In re Chevron Corp.*, No. 10-1146, 2010 WL 3584520, at *6 (S.D. Cal. Sept. 10, 2010); *In re Chevron Corp.*, Nos. 10-MC-21, 10-MC-22, Dkt. 77 at 3–4 (D.N.M. Sept. 2, 2010); *In re Chevron Corp.*, Nos. 10-MC-27, 10-MC-28, 2010 WL 3418394, at *6 (W.D.N.C. Aug. 30, 2010); *In re Chevron Corp.*, No. 10-2675, Dkt. 33 at 43–44 (D.N.J. June 11, 2010).  And the international arbi-

7

Emblematic of their inability to refute Chevron's evidence that Defendants have mounted a scheme to defraud and extort Chevron by, among other things, corrupting the Ecuadorian court process, the LAPs' "update" ignores the district court's detailed March 15, 2013 crime-fraud ruling on Chevron's subpoena to Patton Boggs. SDNY Dkt. 905.[7] Despite extensive opportunities to make whatever showing they desired,[8] neither the LAPs, Donziger, nor Patton Boggs itself—all of whom filed objections to the subpoena—offered any evidence refuting Chevron's evidence of probable cause to find multiple criminal and/or fraudulent acts. This, even though the allegations were such that if there were countervailing evidence to be had, it would be in the possession of the LAPs or Donziger. For instance, four different parts of the judgment are "virtually identical" to "internal LAP documents that never were part of the Ecuadorian court record" and the district court found that there is "probable cause to suspect that the LAPs, not the judge, wrote the relevant part of the Judgment." *Id*. at 19–21. If there were a legitimate explanation

---

tral tribunal presiding over Chevron's related action against the Republic of Ecuador ("ROE") recently issued an interim award after finding that the ROE had violated its prior rulings by allowing "the finalisation and enforcement subject to execution of the [Ecuadorian] Judgment." SDNY Dkt. 824 at 34.

[7]    The district court later granted Defendants' motions for reconsideration of its ruling and adhered to the prior decision after addressing each of Defendants' arguments. *See* SDNY Dkt. 1151.

[8]    Chevron served its subpoena in July 2012, and the parties engaged in several rounds of briefing and a two-day hearing to resolve Patton Boggs's various objections. SDNY Dkt. 905 at 43-46.

for this, the LAPs would know it and would state it. But they cannot. Consequently, the court ultimately found that Chevron had satisfied the first prong of the crime-fraud exception on numerous subjects based on "probable cause to suspect, and often stronger evidence, that" the LAPs' agents—led by Donziger—have pursued an elaborate scheme to extort Chevron through acts of fraud, collusion, and bribery. *See id.* at 4, 14–21.[9]

Similarly, the LAPs ignore the stream of former insider witnesses who have come forward to reveal Defendants' fraud (including a former Ecuadorian judge who oversaw the case, the LAPs' former environmental consultants, Defendants' one-time litigation financier, and their prior expert witness). In addition to the LAP insider who provided evidence against Defendants earlier this year (*see* Dkt. 58-1 at 5–7),[10] new insider witnesses now confirm Defendants' fraud:

- Former Ecuadorian Judge Alberto Guerra—who at one point presided over the Lago Agrio case—admitted under oath that the LAPs' counsel promised him and the then-presiding Ecuadorian judge a $500,000 bribe in exchange for issuing a judgment in the LAPs' favor that the LAPs' counsel drafted.

---

[9]   The court also described Patton Boggs's role in the scheme, including its efforts "to assist in preventing Chevron from obtaining discovery" that would eventually help Chevron to uncover the fraud. *Id.* at 29.

[10]   One of the LAPs' former Ecuadorian experts, Fernando Reyes, described the LAPs' team's multiple secret meetings with the supposedly independent and impartial court-appointed damages expert, Richard Stalin Cabrera Vega ("Cabrera"). *See* Dkt. 58-1 at 6. Reyes explained in his declaration that it was "obvious" from those meetings that the LAPs "would write a report that would support their claim for billions of dollars against Chevron and would simply put Mr. Cabrera's name on it." *Id.*

*See* Dkt. 58-1 at 5–6; SDNY Dkts. 746-3–746-6.  Mr. Guerra has since been deposed and has confirmed his declaration testimony.

- The LAPs and Donziger's former co-defendants, Douglas Beltman and Ann Maest of Stratus Consulting, Inc.—chief authors of the ghostwritten Cabrera report—acknowledged they have no evidence that Cabrera had any role in preparing the report he submitted, they admitted the Cabrera Report had no scientific basis, and they disavowed both the Cabrera Report and the numerous public statements the LAPs' team has made regarding the supposed scientific basis for their claims.  SDNY Dkt. 1007-1 ¶¶ 15, 57, 73.

- The LAPs and Donziger's former funders came forward to accuse them of fraud.  Christopher Bogart, CEO of Burford Capital, LLC, a litigation finance firm that invested $4 million in the LAPs' team's litigation efforts, described under oath how Donziger and Patton Boggs have defrauded Burford.  *See* SDNY Dkt. 1039-2 ¶¶ 4, 13 ("[T]he representations that Patton Boggs made to us . . . were false and misleading in several respects.  There is absolutely no question that Burford would not have invested in the litigation . . . had we known the whole truth about Cabrera.").

- David Russell, a former LAP expert, described in a sworn declaration how as "lead environmental scientist" for the LAPs in 2004, he found that the "environmental evidence did not and does not support the [LAPs'] claims. SDNY Dkt. 1141-2 (Ex. 3708) ¶ 3.  He further explained how Donziger would knowingly refuse to conduct, or would cancel, testing that would exonerate TexPet's operations:  "I came to realize that Donziger did not really want to know what, if anything, was causing harm to residents.  His primary focus was on sticking it to Chevron and he had limited interest in investigating any other causes of health harm."  *Id*. ¶ 21.

While ignoring these major developments that go to the heart of Defendants' fraud, the LAPs complain about recent discovery rulings, an evidentiary hearing held on Chevron's motion for discovery sanctions, and the appointment special masters to preside over depositions.  Dkt. 75-1 at 2–4, 7–8.  But mandamus is not available "to second-guess trial judges" in their day-to-day management of a case.

10

*In re U.S. Dep't of Defense*, 848 F.2d 232, 238 (D.C. Cir. 1988); *see In re Traffic Executive Ass'n-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980) ("This Court will not issue mandamus with respect to a discretionary order except in the most extraordinary circumstances."); *see also Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005) ("A district court has broad discretion to manage pre-trial discovery . . . ."); *Phelan v. Middle States Oil Corp.*, 156 F.2d 697, 698 (2d Cir. 1946) (reference to a special master is subject to the district court's broad discretion). Moreover, while the LAPs complain about the costs associated with attending the hearing and having special masters travel to and oversee depositions, the LAPs do not dispute that these costs are attributable to Defendants' own misconduct and that of their agents.[11]

The LAPs even complain about administrative motions where the court *granted* the relief sought by their counsel. The district court granted the LAPs and Donziger's counsel's coordinated motions to withdraw from the case due to a pur-

---

[11]   The district court appointed the special masters largely because of Defendants' track record of deposition and discovery misconduct. *See* SDNY Dkt. 865 at 1 ("The LAP Representatives, the Donziger Defendants, and their Ecuadorian allies have been remarkably obstructive in this case."). Further, "defendants have made no showing that they are unable to afford the costs associated with the special masters' services," and upon the conclusion of the masters' work, they will "recommend an allocation of the costs to the parties pursuant to Rule 53(g)(3)." *Id*. at 1-2. With respect to the evidentiary hearing in April, the LAPs do not deny their role in obtaining an "obviously collusive" order from an Ecuadorian court that was designed to frustrate Chevron's discovery efforts here. SDNY Dkt. 905 at 48. And the hearing produced significant evidence of discovery abuses by the LAPs' team—including Patton Boggs. *See, e.g.*, Dkt. 75-16 at 318-19; *see generally* SDNY Dkts. 839, 894 (motion for sanctions).

ported lack of payment.[12]  The LAPs suggest it was somehow improper for the district court not to "keep counsel in the case until after the close of discovery."  Dkt. 75-1 at 8.  But neither the LAPs nor Donziger ever asked for such relief, or even opposed their counsel's motions for withdrawal.  Indeed, their counsel expressly sought to withdraw on an expedited basis to avoid the last month of discovery and the associated new legal fees.  SDNY Dkt. 1102 at 2.

The common theme of these various complaints is the LAPs' pose as helpless victims.  But even the LAPs' claim that they are left being "represented by a solo practitioner" (Dkt. 75-1 at 9) is false, since they are represented in this Court—and surreptitiously in the district court[13]—by a multinational law firm with more than 500 lawyers, and their privilege logs indicate they have over 100 lawyers and at least 20 law firms (excluding withdrawing counsel).  SDNY Dkt. 1141 (Ex. 3702).  In fact, one of their lawyers recently boasted that he was part of "one

---

[12]  These withdrawal efforts began within days of a Canadian court's rejection of the LAPs' attempt to enforce their judgment, finding that the LAPs could not pursue collection against Chevron or its subsidiaries in Canada:  "The plaintiffs have no hope of success in their assertion that the corporate veil of Chevron Canada should be pierced[.]"  SDNY Dkt. 1141-2 (Ex. 3707) at 41.

[13]  The district court questioned the LAPs' counsel in a hearing last week:  "[A]re you representing to me now that Patton Boggs has no part whatsoever in your representation of your clients *in this case*?," to which counsel responded:  "No, your Honor, I am not representing that to you."  The court followed up:  "And are you representing that they've had no part whatsoever in the representation of your clients *in this case before this Court* in the last six months?," to which counsel answered:  "No, your Honor, I'm not representing that to you."  Mastro Decl., Ex. 1 at 20:12-21:3 (emphasis added).

of the most powerful teams of litigators ever assembled." SDNY Dkt. 1141-1 (Ex. 3703). And Donziger has admitted that his "former" counsel continue to work on his behalf, and his former counsel have expressed "hope" they will soon reenter the case. SDNY Dkt. 1101 ¶ 14; SDNY Dkt. 1187-3 at 2–3.

The LAPs hold an $18.2 billion judgment, and if they cannot raise money to defend themselves with such a staggering apparent asset, that is an admission that their judgment is, in fact, worthless. The LAPs' claim that Chevron is trying to "'bulldoze a result using its limitless resources'" (Dkt. 75-1 at 6) ignores not only the "mounds of evidence" that numerous courts have recognized Chevron has proffered,[14] but also the district court's findings that (1) "[t]he balance – in terms of the number of motions made and, for that matter, motions won and motions lost – is not very far from even"; (2) "defendants' requests for discovery from Chevron have exceeded Chevron's requests from defendants both in number and scope" and "Chevron has produced more than 300 times as many documents to defendants as defendants have to Chevron"; and (3) "Donziger and the LAPs raised millions of dollars from various outside sources to fund their litigation." SDNY Dkt. 1164 at 2–5 & n.16.[15]

---

[14]   *In re Chevron Corp.*, No. 11-24599, Dkt. 82 at 4 (S.D. Fla. June 12, 2012), *adopted*, Dkt. 128 (S.D. Fla. Feb. 27, 2013).

[15]   "In short, the claims of impoverishment and inability to pay are unsupported, as are the claims that the lack of funds that may exist is attributable to any abuse by Chevron or anyone else. This is a high stakes lawsuit that may affect as much as

Finally, the district court recently granted Donziger's request to extend the discovery deadline by approximately one month to give him additional time to prepare for and attend the upcoming depositions (SDNY Dkt. 1185), including the deposition of Chevron's CEO following the denial of Chevron's motion to quash the same (SDNY Dkt. 1149).  This extension resulted in Donziger having a "continuous hiatus of two weeks" to prepare for upcoming depositions that will resume no earlier than June 3, 2013.  Mastro Decl., Ex. 2 at 2.

## CONCLUSION

For the foregoing reasons, the Court should deny the LAPs' motion.

Dated:  May 28, 2013

Respectfully submitted,
/s/ Randy M. Mastro

Gibson, Dunn & Crutcher LLP
Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000

---

$19 billion."  SDNY Dkt. 1164 at 6.  The LAPs and Donziger have repeatedly ignored the district court's requests to provide evidence supporting claims of financial difficulties.  *See* SDNY Dkt. 999 at 2 (responding to the LAPs' and Donziger's letter threatening refusal to pay the special masters' fees:  "Counsel and their clients, *whose claims of financial hardship are undocumented*, proceed at their own risk" (emphasis added))

Facsimile: 213.229.7520

*Attorneys for Respondent*
*Chevron Corporation*