**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): **13-772**                                        Caption [use short title]

Motion for: **Leave to File Brief Amicus Curiae**            In Re: Hugo Gerardo Camacho Naranjo

Set forth below precise, complete statement of relief sought:

The Chamber of Commerce of the United States of

America seeks leave to file a Brief Amicus Curiae in

Opposition to the Petition for Writ of Mandamus filed

by Petitioners

MOVING PARTY: **The Chamber of Commerce of the U.S.A.**    OPPOSING PARTY: **Petitioners**

☐ Plaintiff        ☐ Defendant
☐ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: **Michael B. Mukasey**    OPPOSING ATTORNEY: **James E. Tyrrell**
[name of attorney, with firm, address, phone number and e-mail]

Debeboise & Plimpton LLP          Patton Boggs LLP
919 Third Ave                      1 Riverfront Plaza
New York, NY 10022                 Newark, NJ 07102
(212) 909-6000; mbmukasey@debevoise.com    (973) 843-5600; jtyrrell@pattonboggs.com

Court-Judge/Agency appealed from: _____

**Please check appropriate boxes:**                FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                   INJUNCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):    Has request for relief been made below?    ☐ Yes ☐ No
☑ Yes ☐ No (explain):_____    Has this relief been previously sought in this Court?    ☐ Yes ☐ No
                                              Requested return date and explanation of emergency:_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know              _____
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know                         _____

Is oral argument on motion requested?    ☐ Yes ☑ No    (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☐ Yes ☑ No    If yes, enter date:_____

Signature of Moving Attorney:
_____ Date: **July 29, 2013**    Service by: ☑ CM/ECF    ☐ Other [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED DENIED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

**Form T-1080** (rev. 7-12)

# NO. 13-772

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

------------------------------------------------------- :

In re Hugo Gerardo Camacho Naranjo and   :
Javier Piaguaje Payaguaje,                      :
                                           :

          *Petitioners,*          :
                                           :

      v.                        :
                                         :

Chevron Corporation,             :
                                         :

          *Respondent,*       :

Steven R. Donziger, et al.,

          *Movants.*

-------------------------------------------------------

## MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF RESPONDENT'S OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

Pursuant to Federal Rules of Appellate Procedure 27 and 29(b), the Chamber

of Commerce of the United States of America (the "Chamber") hereby moves for

leave to file a brief as *amicus curiae*. The proposed *amicus* brief is being filed

with this motion as required by Federal Rule of Appellate Procedure 29. This

motion and the accompanying proposed brief are being filed not later than fourteen

days after Respondent's brief was filed as permitted by this Court's order of July 18, 2013. Consequently, both are timely filed under Federal Rule of Appellate Procedure 29(e).

Counsel for Respondent have authorized counsel for the Chamber to represent that they consent to the Chamber's filing of an *amicus* brief. Counsel for Petitioners have stated that they are not in a position to determine whether they consent to the filing without an explanation of the Chamber's interest in this proceeding or a proffer of the argument it intends to present.

The Chamber is the world's largest federation of businesses and associations. The Chamber represents three hundred thousand direct members and indirectly represents an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country. Because the Chamber's members and affiliates are regularly involved in litigation in the United States federal courts, the resolution of Petitioners' reassignment request is of keen importance to the Chamber. Particularly, as explained in more detail in the brief accompanying this motion, the Chamber has an interest in guarding against manipulation of the judicial disqualification mechanism for improper strategic advantage. The Chamber is concerned that improper resolution of Petitioners' tactical use of a request for judicial reassignment could set a dangerous precedent with long-

standing effects.  This is an issue of importance to the Chamber because it concerns the integrity and independence of the U.S. judicial system that is essential to preservation of a predictable business climate in the United States for the Chamber's members.

Given the importance of the principles at stake and the keen interest of the Chamber's members in the welfare of the U.S. legal system, this case is appropriate for *amicus* participation.  Moreover, consideration of the Chamber's *amicus* brief is desirable for this Court because the Chamber's brief provides a broader perspective on the implications of Petitioners' reassignment request.  The Chamber's brief places Petitioners' request within the larger context of the increased use of improper disqualification requests for strategic gain and explains why this phenomenon is troubling.  In addition, the Chamber's brief highlights supplementary case law demonstrating that this Court has already identified Petitioners' dual strategy of repeated disqualification requests and a widespread media campaign as improper and undesirable.  As a party intently focused on the future implications of this Court's rulings, the Chamber is well suited to provide a cross-industry perspective on the long-term implications of a grant of Petitioners' request.

This Court has previously acknowledged the Chamber's helpful assistance as *amicus curiae*.  *See Hamilton v. Beretta U.S.A. Corp.*, 264 F.3d 21, 27 (2d Cir.

2001) (noting that the Court "received five helpful *amicus* briefs," one of which was filed by the Chamber); *see also In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 149 (2d Cir. 2010) (citing the Chamber's *amicus* brief); *Conroy v. New York State Dept. of Corr. Servs.*, 333 F.3d 88, 93 (2d Cir. 2003) (acknowledging the Chamber's *amicus* brief); *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109 (2d Cir. 2001) (describing the Chamber's position as expressed in its *amicus* brief).  The last time this Court heard a dispute related to this litigation, it granted leave for the Chamber to participate as *amicus curiae* and present the perspective of the U.S. business community.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012).  The Supreme Court of the United States did the same when it considered the petition for certiorari in *Chevron v. Naranjo*, No. 11-1428 (2012).  Given this Court's and the Supreme Court's past acknowledgment of the helpful perspective that the Chamber can bring to the issues in this litigation, the Chamber respectfully requests that the Court allow it to offer such assistance here.

4

For these reasons, the Chamber requests leave to file a brief as *amicus curiae*, and requests that the proposed brief that accompanies this motion be deemed filed.

Dated:  New York, New York
     July 29, 2013

        Respectfully submitted,

        DEBEVOISE & PLIMPTON LLP

By:  Michael B. Mukasey

        919 Third Avenue
        New York, New York 10022
        Tel.:  (212) 909-6000
        Fax:  (212) 909-6836

        *Attorney for Proposed* Amicus Curiae
        *The Chamber of Commerce of the United States of America*

5

# NO. 13-772

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---------------------------------------------------------------  :

In re Hugo Gerardo Camacho Naranjo and Javier  :
Piaguaje Payaguaje,  :
                          :

        *Petitioners,*  :

              :

      v.  :

              :

Chevron Corporation,  :

              :

        *Respondent,*  :

Steven R. Donziger, et al.,

        *Movants.*

---------------------------------------------------------------

## DECLARATION OF MICHAEL B. MUKASEY IN SUPPORT OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA'S MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*

MICHAEL B. MUKASEY, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a partner at Debevoise & Plimpton LLP and a member of the bar of this

Court, counsel for the Chamber of Commerce of the United States of America (the "Chamber").

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 29(b), the Chamber moves for leave

to file as *amicus curiae* in support of Respondent's opposition to Petitioners' petition for a writ

of mandamus and order of reassignment. I submit this declaration in support of that motion.

2.      On July 8, 2013, the Chamber sent Petitioners a letter requesting Petitioners'

consent to the Chamber's appearance as *amicus curiae* and to a seven-day extension of the time

to file set out in Federal Rule of Appellate Procedure 29(e).  Attached hereto as Exhibit A is a true and correct copy of the Chamber's letter dated July 8, 2013.

4. On July 18, 2013, the Chamber requested Petitioners' consent to the Chamber's appearance as *amicus curiae*.  Attached hereto as Exhibit B is a true and correct copy of the Chamber's letter dated July 18, 2013.  The response of Petitioners' counsel to that letter also on July 18, 2013 is annexed hereto as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      July 29, 2013

Michael B. Mukasey
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6836

*Attorney for Proposed* Amicus Curiae
*The Chamber of Commerce of the United States of America*

2

# EXHIBIT A

## DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**Michael B. Mukasey**
Partner
Tel  212 909 6062
Fax  212 909 7062
mbmukasey@debevoise.com

July 8, 2013

BY E-MAIL AND FIRST CLASS MAIL

James E. Tyrrell, Jr.
Patton Boggs LLP
1185 Avenue of the Americas
30th Floor
New York, New York 10036

*In re Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*
**United States Court of Appeals for the Second Circuit Docket No. 11-cv-0691-LAK**

Dear Mr. Tyrrell:

I write to give notice that the National Chamber Litigation Center ("the Chamber") intends to file a brief as *amicus curiae* in opposition to petitioner's request for a writ of mandamus ordering the reassignment of the case to a different district court judge. The Chamber seeks petitioner's consent to the filing of the *amicus* brief and to a seven-day extension to the time for filing provided by Federal Rule of Appellate Procedure 29. The extension would permit the Chamber to file within the same time period allowed to Judge Kaplan in the Court's order of June 17, 2013. If petitioner consents to the filing and the extension, I would be grateful if you could send me a letter to that effect. I would also be grateful if you could indicate whether you are authorized to consent to our *amicus curiae* filing on behalf of your colleagues Craig Smyser and Julio C. Gomez.

Thank you in advance for your consideration. Should you have any questions or concerns, please do not hesitate to call me at (212) 909-6062 or send me an email at mbmukasey@debevoise.com.

Very truly yours,

Michael B. Mukasey

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

# EXHIBIT B

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**Michael B. Mukasey**
Partner
Tel  212 909 6062
Fax  212 909 7062
mbmukasey@debevoise.com

July 18, 2013

BY E-MAIL AND FIRST CLASS MAIL

James E. Tyrrell, Jr.
Patton Boggs LLP
1185 Avenue of the Americas
30th Floor
New York, NY   10036

*In re Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*
**United States Court of Appeals for the Second Circuit Docket No. 11-cv-0691-LAK**

Dear Mr. Tyrrell:

As noted in my letter to you dated July 8, 2013, we represent the National Chamber Litigation Center ("the Chamber"), which wishes to file a brief as *amicus curiae* in opposition to petitioners' request for a writ of mandamus ordering the reassignment of the case to a judge other than Judge Kaplan.   In your papers opposing our request for a seven-day extension to file, you said specifically that you were expressing no view whether you would consent to the filing of the brief; hence, this letter. This is to request your consent to that filing.  For your convenience, my e-mail address is mbmukasey@debevoise.com.

Thank you for your consideration.

Very truly yours,

Michael B. Mukasey

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

# EXHIBIT C

**Prusak, Christina T.**

| | |
|---|---|
| **From:** | Tyrrell, James <JTyrrell@PattonBoggs.com> |
| **Sent:** | Thursday, July 18, 2013 1:28 PM |
| **To:** | Mukasey, Michael B. |
| **Cc:** | Prusak, Christina T.; Carney, Anne J. |
| **Subject:** | RE: In re: Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, US Court of Appeals for the Second Circuit Docket No. 11-ev-0691-LAK |

Dear Judge Mukasey:

Thank you very much for your letter.  We are not in a position at this time to determine whether our clients will consent or oppose your request for leave to submit an amicus brief on behalf of the United States Chamber of Commerce without knowing the arguments or the basis for the Chamber of Commerce's interest in this particular dispute.  Thus, we take no position at this time and will make that determination once your motion is filed.

Regards,

James E. Tyrrell, Jr.


James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
One Riverfront Plaza
Newark, New Jersey   07102-0301
Main:  (973) 848-5600
Direct: (973) 848-5620
Fax:  (973) 848-5601
jtyrrell@pattonboggs.com
www.pattonboggs.com


-----Original Message-----
From: Carney, Anne J. [mailto:ajcarney@debevoise.com]
Sent: Thursday, July 18, 2013 11:44 AM
To: Tyrrell, James
Cc: Mukasey, Michael B.; Prusak, Christina T.
Subject: In re: Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, US Court of Appeals for the Second Circuit Docket No. 11-0v-0691-LAK

Dear Mr. Tyrrell,

Attached please find Judge Mukasey's correspondence to you dated July 18, 2013 regarding the above matter.

Thank you.

Anne J. Carney, Assistant
Hon. Michael B. Mukasey
Partner
Debevoise & Plimpton LLP

1

New York, NY 10022
(T) 212-909-6589
(F) 212-909-6836

NOTE: The information contained in this message is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited.  If you have received this transmittal in error, please notify me immediately at (212) 909-6589.

DISCLAIMER: This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) at (202) 457-6000 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you. This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated. To learn more about our firm, please visit our website at http://www.pattonboggs.com.

# NO. 13-772

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

IN RE HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE,

*Petitioners,*

v.

Chevron Corporation,
*Respondent,*

Steven R. Donziger, et al.,
*Movants.*

BRIEF OF THE CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA AS *AMICUS CURIAE*
IN SUPPORT OF RESPONDENT'S OPPOSITION TO
PETITION FOR WRIT OF MANDAMUS

DEBEVOISE & PLIMPTON LLP

Michael B. Mukasey
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

*Attorney for Proposed* Amicus Curiae
*The Chamber of Commerce of the United
States of America*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel states that the Chamber of Commerce of the United States of America is a nonprofit corporation organized under the laws of the District of Columbia.  It has no parent company and has issued no stock.

# TABLE OF CONTENTS

IDENTITY, INTEREST AND AUTHORITY OF *AMICUS* .....................................1

BACKGROUND .............................................................................................2

ARGUMENT ..................................................................................................5

I.    Reassignment Is A Rare And Extraordinary Remedy Not Warranted In This
      Instance.................................................................................................6

    A.    Petitioners should not be permitted to profit from manufacturing
            controversy surrounding a judge's impartiality. .......................................6

    B.    Petitioners have failed to set forth facts that justify the extraordinary
            remedy of reassignment...........................................................................9

    C.    Reassignment would threaten the independence of the judicial system. .12

CONCLUSION ............................................................................................15

ii

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Aguinda v. Texaco, Inc.*, 139 F. Supp. 2d 438 (S.D.N.Y. 2000) ..............................7

*Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006) ................................................11

*Cheney v. United States District Court for the District of Columbia*, 541
    U.S. 913 (2004) ....................................................................................................13

*Chevron Corp. v. Naranjo,* Nos. 11-1150-cv(L), 11-1264-cv(con), 11-2259-
    op(con), 2011 WL 4375022 (2d Cir. Sept. 19, 2011).......................................3, 6

*Chevron Corp. v. Donziger*, No. 1:11-cv-00691-LAK-JCF (S.D.N.Y. Feb.
    24, 2012) ................................................................................................................7

*E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843
    (E.D. Va. 2012) ...................................................................................................13

*In re Aguinda*, 241 F.3d 194 (2d Cir. 2001) ..........................................................7, 8

*In re Basciano*, 542 F.3d 950 (2d Cir. 2008) ..............................................................6

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307 (2d Cir. 1988) .....................7, 8

*In re Evergreen Sec. Ltd.*, 570 F.3d 1257 (11th Cir. 2009) .....................................13

*In re Judicial Misconduct*, 623 F.3d 1101 (9th Cir. 2010) ...............................13, 14

*In re Mann*, 229 F.3d 657 (7th Cir. 2000) .................................................................8

*Keith v. Barnhart*, 473 F.3d 782 (7th Cir. 2007) .......................................................6

*Liteky v. United States*, 510 U.S. 540 (1994).............................................................6

*Martens v. Thomann*, 273 F.3d 159 (2d Cir. 2001) ..................................................12

*Rosen v. Sugarman*, 357 F.2d 794 (2d Cir. 1966) ....................................................11

*SEC v. Razmilovic*, - - - F.3d - - -, 2013 WL 3779339 (2d Cir. July 22, 2013).........9

iii

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007)...............11

*Sullivan v. Conway*, 157 F.3d 1092 (7th Cir. 1998) ....................................................8

*United States v. Basciano*, 384 F. App'x 28 (2d Cir. 2010) ......................................9

*United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000)..............................................8

*United States v. Campo*, 140 F.3d 415 (2d Cir. 1998)........................................10, 11

*United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013)................................6

*United States v. Cruz*, 481 F. App'x 650 (2d Cir. May 31, 2012)............................9

*United States v. Londono*, 100 F.3d 236 (2d Cir. 1996)............................................9

*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977)....................................5, 9, 10, 11

*United States v. Urben-Potratz*, 470 F.3d 740 (8th Cir. 2006)................................8

*United States v. Williams*, 624 F.3d 889 (10th Cir. 2010)........................................7

**RULES**

Federal Rule of Appellate Procedure 29.....................................................................2

**OTHER AUTHORITIES**

Linda Greenhouse, *Recuse Me*, N.Y. TIMES OPINIONATOR BLOG (May 4,
    2011, 9:39 PM),
    http://opinionator.blogs.nytimes.com/2011/05/04/recuse-me/..........................13

Andrew Longstreth, *ACLU Asks Federal Circuit Chief Judge to Recuse
    Himself from Controversial Gene Patenting Case – Before He's Even
    Been Assigned to Hear It*, AM. LAW, (Aug. 5, 2010),
    http://www.americanlawyer.com/PubArticleTAL.jsp?id=1202464312762 ......14

iv

## IDENTITY, INTEREST AND AUTHORITY OF *AMICUS*[1]

*Identity*:  The Chamber of Commerce of the United States of America (the

"Chamber") is the world's largest federation of businesses and associations, which

represents three hundred thousand direct members and indirectly represents an

underlying membership of more than three million U.S. businesses and

professional organizations of every size, in every economic sector and geographic

region of the country.  One important Chamber function is to represent the interests

of its members in matters before the courts, Congress, and the Executive Branch.

To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise

issues of concern to the nation's businesses.

*Interest*:  The Chamber's members and affiliates are regularly involved in litigation

in U.S. federal courts.  The effective and efficient functioning of those courts and

the integrity of their judges are essential to maintaining a predictable climate for

business and economic growth in the United States.  Chamber members—and the

broader national and global economies—rely on the U.S. judiciary's international

reputation for fairness, objectivity, and predictability.  The Chamber is concerned

---

[1] No person other than the *amicus* and its counsel authored this brief in whole or in
part.  No party, no party's counsel and no other person—other than the *amicus
curiae*, its members, or its counsel—contributed money that was intended to fund
preparing or submitting the brief.

that Petitioners' improper tactical use of a request for judicial reassignment poses a threat not only to the correct resolution of this case but also to the international reputation of the U.S. judicial system.  Disqualifying the district judge in this instance would encourage other litigants to use requests for recusal and reassignment for strategic purposes and to manipulate the U.S. judicial process.

*Authority*:  Federal Rule of Appellate Procedure 29(a) authorizes this brief. Respondent has consented to the Chamber's appearance as *amicus curiae*, although Petitioners have not.[2]  This brief is timely filed pursuant to an extension granted by this Court on July 18, 2013 and Federal Rule of Appellate Procedure 29(e).

## BACKGROUND

In 2011, after Petitioners secured an $18.2 billion judgment against Chevron in the courts of Ecuador, the company sued parties involved in those proceedings, alleging unlawful conduct in aid of obtaining the judgment.  It also sought a

---

[2]  Petitioners' counsel did not respond to either a telephone call or a letter requesting an extension of time to file this brief.  *See* Mukasey Aff., Ex. A.  When, after waiting two days, the Chamber moved for the extension, Petitioners filed an opposition brief within a day.  After the extension was granted, counsel declined to express a view as to whether the Chamber should be allowed to file its brief until the nature of its interest in this case, which has not changed since it filed an *amicus* brief when Petitioners were here in 2011, was explained, and until counsel could review the arguments the Chamber intended to advance.  *See* Mukasey Aff., Exs. B, C.

declaration that the judgment was void because the alleged unlawful conduct tainted the proceedings. Judge Lewis A. Kaplan granted the declaratory relief, severing the declaratory portion of the case so as to facilitate appellate review.

Petitioners did not merely appeal the outcome, but heaped abuse on the judge, seeking the extraordinary remedy of mandamus and calling him "Chevron's single greatest ally in its eighteen-year effort to evade liability," "unabashed in making known his prejudice toward the Ecuadorian court system," "confer[ing] . . . extraordinary benefits . . . on Chevron," and making "gratuitous legal and factual conclusions, tainted by prejudice." Pet. for Writ of Mandamus, at 2, 4, 17, *Chevron Corp. v. Naranjo,* 2011 WL 4375022 (2d Cir. Sept. 19, 2011) (Nos. 11-1150-cv(L), 11-1264-cv(con), 11-2259-op(con)).

This Court denied mandamus, but reversed the declaratory judgment on the ground that the underlying statute did not permit such relief absent an attempt to enforce the judgment. On remand, the district court duly dismissed the declaratory judgment action but did not permit Petitioners to effect a tactical withdrawal of their collateral estoppel defense to the underlying action.

Here, Petitioners have amplified their abuse of Judge Kaplan, to the accompaniment of a shrill media campaign. Thus, in their papers, they accuse him of "manufactur[ing] a claim" for Respondent, being "scornful toward Ecuador's

3

courts," "resorting to judicial gymnastics" to support Respondent's position, "engag[ing] in a systematic, pervasive, biased and disrespectful effort to evade and defy this Court's instructions," "intentional mismanagement" of aspects of the proceedings, as well as "liberally brush[ing] aside" privilege. Br. for Pet'rs, at 3, 9 n.12, 24, 28; Supplemental Br. for Pet'rs, at 5, 7.

Their media campaign has included reports that Judge Kaplan is "truly corrupt," "openly biased in favor of the company [Chevron]," has "a truly racist attitude against Ecuador," and "[seeks] to protect the bottom line of the company instead of protecting justice." Resp't Opp'n to Mot. to Expedite, Ex. B, at 5–6; *see also id.* Ex. C, at 4 (referring to judge as having "a corrupt, arrogant, racist attitude"). They have also sponsored allegations that "[t]he real conspiracy is between Chevron and Judge Kaplan who are working in concert to prevent the Ecuadorians from enforcing a legitimate judgment," *id.* Ex. E, at 2; *see also id.* (attributing conspiracy allegations to a spokesperson for Petitioners), as well as characterizations of Judge Kaplan as "a real stinker . . . desperately trying to protect Chevron," *id.* Ex. D, at 2. Just two weeks ago, during briefing on this matter, they published an article that referred to Judge Kaplan as someone who "appears to be openly running a 'pay-to-play' courtroom right in the heart of

4

Manhattan."[3]

## **ARGUMENT**

Under the precedent invoked by Petitioners, two circumstances warrant a judge's disqualification: detailed findings based on incompetent evidence or improper factors, and repeated adherence to an erroneous view of the law that has been called to the judge's attention. *See United States v. Robin*, 553 F.2d 8, 9–10 (2d Cir. 1977) (cited in Br. for Pet'rs at 31–33). Neither is present here.

Rather, Petitioners request the rare and extraordinary remedy of reassignment—notwithstanding prior denial of their multiple recusal requests to date, and of their 2011 mandamus recusal petition—by attacking the district judge's impartiality both in litigation proceedings and in the press, based on his rulings in the case, and then using those attacks as an excuse for disqualifying him.

We respectfully urge this Court not to reward these tactics—pursued in disregard of this Court's case law applicable to disqualification of a judge—and to send a clear message that they are unacceptable. Yielding to this behavior would not only result in gross inefficiencies and a waste of judicial resources, but also

---

[3] *Judge Lewis A. Kaplan Socks Ecuador Indigenous Groups With Huge Bills for His "Special Master" Friends*, THE CHEVRON PIT (July 16, 2013, 10:56 AM), http://thechevronpit.blogspot.com/2013/07/judge-lewis-kaplan-socks-ecuador.html.

5

validate Petitioners' strategy and encourage other litigants to do likewise. That would undermine the integrity and independence essential to the effective functioning of the U.S. judicial system, and signal that such behavior is not only acceptable, but effective. Accordingly, we respectfully urge this Court to deny Petitioners' request for reassignment and to issue an order making it clear that those who follow Petitioners' course do so at their own peril.

## I.    Reassignment Is A Rare And Extraordinary Remedy Not Warranted In This Instance.

As noted, in the Second Circuit, reassignment "is an extreme remedy, rarely imposed." *United States v. City of New York*, 717 F.3d 72, 99 (2d Cir. 2013). Those rare circumstances are not present here.

### A.    *Petitioners should not be permitted to profit from manufacturing controversy surrounding a judge's impartiality.*

Petitioners' reassignment request is based essentially on the same allegations of bias recited in their past requests for the district judge's removal, including Petitioners' 2011 recusal mandamus petition that this Court denied. *See Chevron Corp. v. Naranjo,* Nos. 11-1150-cv(L), 11-1264-cv(con), 11-2259-op(con), 2011 WL 4375022 (2d Cir. Sept. 19, 2011) (order denying mandamus petition) (citing *Liteky v. United States*, 510 U.S. 540, 554–56 (1994), *In re Basciano*, 542 F.3d 950, 955–56 (2d Cir. 2008), and *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir.

6

2007)); *see also Chevron Corp. v. Donziger*, No. 1:11-cv-00691-LAK-JCF

(S.D.N.Y. Feb. 24, 2012) (denying recusal motion).[4]  Indeed, Petitioners admit that

their allegations of bias are recycled from their rejected 2011 mandamus petition

and ask this Court to consider those allegations in evaluating the basis for their

present petition.  Br. for Pet'rs, at 31, n.51.  Petitioners would avoid the *res*

*judicata* effect of this Court's prior order by recasting their request in terms of

reassignment and centering their allegations of bias on the district court's supposed

disregard of binding Circuit precedent.

By repeatedly requesting the district court judge's removal from the case

while simultaneously proliferating attacks on his integrity in the press, Petitioners

have sought to create a storm of controversy over the judge's impartiality.  The

transparent purpose here is to remove the judge from the case by either pressuring

him into recusal or convincing this Court to reassign the case to cure the

appearance of bias that Petitioners themselves have conjured.

This Court, and others, have condemned such tactics as impermissible

"judge-shopping."  *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d

Cir. 1988) (requests for recusal); *see also United States v. Williams*, 624 F.3d 889,

---

[4] Prior to the present proceedings, Petitioners pursued similar attacks against Judge
Rakoff; those requests for recusal and reassignment were denied both by the
district court and this Court.  *See In re Aguinda*, 241 F.3d 194, 197 (2d Cir. 2001);
*Aguinda v. Texaco, Inc.*, 139 F. Supp. 2d 438 (S.D.N.Y. 2000).

894 (10th Cir. 2010) ("A motion to change judges is properly denied when it is essentially a judge shopping attempt to have a case reassigned to another judge in the hopes of obtaining a more favorable result.") (internal quotation marks omitted); *United States v. Urben-Potratz*, 470 F.3d 740, 745 (8th Cir. 2006) (same); *In re Mann*, 229 F.3d 657, 658 (7th Cir. 2000) (same). This Court has shown heightened concern when litigants seek to use the media to achieve removal of a judge from a case. In *In re Drexel*, this Court recognized that litigants' use of media attacks on a "judge's impartiality . . . would effectively veto the assignment of judges" and risk "becom[ing] an additional and potent tactical weapon in the skilled practitioner's arsenal." 861 F.2d at 1309 (2d Cir. 1988); *see also United States v. Bayless*, 201 F.3d 116, 129 (2d Cir. 2000) ("[O]ur court [has] emphasized one of the serious problems with ruling that media attacks on a judge can be readily made the basis for recusal: parties who are sophisticated in their dealings with the press might then be able to engineer a judge's recusal for their own strategic reasons."); *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998) ("[I]t is improper for a lawyer or litigant . . . to *create* the ground on which he seeks . . . recusal . . . .") (emphasis in original).

This case is the nightmare described in *In re Drexel* come to life. *See* 861 F.2d at 1309; *In re Aguinda*, 241 F.3d at 206 ("[A] judge should not grant a recusal motion simply because a claim of partiality has been given widespread publicity.

8

To do so would unfairly allow those with access to the media to judge-shop.")
(citations omitted); *United States v. Basciano*, 384 F. App'x 28, 33 (2d Cir. 2010)
(summary order) (same).

**B.**    ***Petitioners have failed to set forth facts that justify the extraordinary remedy of reassignment.***

Despite the torrent of disparagement described above, Petitioners have failed
to allege facts sufficient to justify an order of reassignment.

Petitioners' request is premised on the district court's alleged legal error,
rather than factual findings, and therefore could fall, if anywhere, only in the
second category of cases in which "a judge has repeatedly adhered to an erroneous
view after the error is called to his attention." *Robin*, 553 F.2d at 11. Such cases
involve extreme disregard for a higher court's mandate: cases involving either
defiance of the superior court's instructions or failure to account for the higher
court's legal commands. *See, e.g.*, *United States v. Londono*, 100 F.3d 236, 240
(2d Cir. 1996) (judge remarked "I'm in no position to follow the mandate of the
Court of Appeals"). Because ordinary legal error is insufficient to justify
reassignment, Petitioners must identify conduct that constitutes something more to
state their claim for relief. *See United States v. Cruz*, 481 F. App'x 650, 653 (2d
Cir. May 31, 2012) (summary order); *cf. SEC v. Razmilovic*, - - - F.3d - - -, 2013

9

WL 3779339, at *11–13 (2d Cir. July 22, 2013) (holding recusal not warranted because bias could not be inferred from case management and trial rulings).

The conduct of the district judge described by Petitioners is not "repeated[] adhere[nce] to an erroneous view." *Robin*, 553 F.2d at 11. The district judge has not announced an intention not to follow this Court's orders; instead he explicitly followed this Court's mandate by dismissing the declaratory judgment action underlying the appeal. In addition, the district judge has not shown over a substantial period of time a determination always to rule one way on a particular legal question. *Cf. United States v. Campo*, 140 F.3d 415, 420 (2d Cir. 1998) (concluding reassignment was warranted in light of judge's "firmly expressed position" over course of decades). Instead, the district judge has conducted proceedings in a manner which he reasonably believes comports with both the letter and spirit of this Court's prior ruling. If the district judge is mistaken, the proper remedy is reversal on appeal—not reassignment.

Petitioners identified no case in which reassignment was ordered based on facts similar to those present here. Rather, they have cited several cases which are on their face distinguishable and inapposite—and which thus establish nothing more than that reassignment orders turn on highly fact-sensitive inquiries that occasionally may warrant a result contrary to the proper result here. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007)

10

(reassignment proper after "the judge has rendered a visceral judgment on appellant's personal credibility" and "the judgment below was entered after a default" such that there were "no costs in judicial economy"); *Armstrong v. Guccione*, 470 F.3d 89, 113 (2d Cir. 2006) (a "fresh look by a different pair of eyes" was warranted when seven years had passed since the judge had first ruled in the case); *Campo*, 140 F.3d at 417 (2d Cir. 1998) (reassignment proper in light of district court judge's twenty-year refusal, spanning multiple unrelated cases, to issue below-Guidelines sentences in particular circumstances). Petitioners even cited a case in which this Court denied mandamus seeking to undo a judge's refusal to disqualify himself. *Rosen v. Sugarman*, 357 F.2d 794 (2d Cir. 1966). There, this Court identified the risk that mandamus might "become a potent weapon for harassment and delay," and noted that "consistent rejection of an attorney's contentions or strong measures to prevent what he regards as an inexcusable waste of time" are *not* evidence of bias or prejudice. *Id.* at 797–98. *Rosen* supports, rather than undermines, the conclusion that reassignment would be inappropriate here.

Petitioners have also failed to show that reassignment would not "entail waste and supplication out of proportion to any gain in preserving the appearance of fairness." *Robin*, 553 F.2d at 10. Throughout the proceedings, Petitioners have complained about the significant monetary burdens imposed by the litigation. *See,*

11

*e.g.,* Supp. Br. for Petr's, at 6. These complaints seem curious given that Petitioners' continued requests for essentially identical relief—which this Court has denied—have forced the parties to expend significant time and resources on briefing. Reassignment of the case would only add to those costs and further prolong the proceedings because it would require familiarizing a new district court judge with the case's lengthy and complex factual and procedural history. Reassignment would also place a large burden on the new district court judge's docket, as delay would be unavoidable while a new judge becomes familiar with this complex case. Indeed, this Court has refused to order reassignment in large, complex cases similar to this one where reassignment would result in significant inefficiencies when the existing judge knows the underlying facts, applicable law, and procedural history. *See, e.g., Martens v. Thomann*, 273 F.3d 159, 175 (2d Cir. 2001) (denying reassignment in "a large, complex, and long-lived [litigation] with which [the judge] is intimately familiar" because it would "necessarily engender a good deal of waste and duplication").

## C.    *Reassignment threatens the independence of the judicial system.*

Granting Petitioners' request for reassignment would also have troubling implications beyond this case: It would transform behavior that should be treated as marginal and make it instead cutting edge, perhaps even the norm.

12

Requests for orders of recusal even now are on the rise. An article by journalist Linda Greenhouse highlights several recent recusal requests in high-profile cases.[5] As Greenhouse notes, these recent examples of high-profile recusal requests appear motivated by outcome-driven strategy rather than meritorious grounds for recusal. *See, e.g., Cheney v. United States District Court for the District of Columbia*, 541 U.S. 913, 923 (2004) (Scalia, J.) (discussing petition for recusal's focus on impartiality questions raised in and by the media rather than on applicable case law compelling recusal). Denials of other less recent high-profile recusal requests have also explicitly identified their improper strategic motivations. *See, e.g., In re Judicial Misconduct*, 623 F.3d 1101, 1102 (9th Cir. 2010) (sanctioning attorney for filing frivolous misconduct complaints against nineteen federal judges as admitted litigation tactic); *In re Evergreen Sec. Ltd.*, 570 F.3d 1257, 1275 (11th Cir. 2009) (imposing sanctions for lawyer's "overzealous litigation tactics" in seeking a judge's recusal in bad faith); *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va.

---

[5] Linda Greenhouse, *Recuse Me*, N.Y. TIMES OPINIONATOR BLOG (May 4, 2011, 9:39 PM), http://opinionator.blogs.nytimes.com/2011/05/04/recuse-me/.

2012) (rejecting recusal motion and stating "[t]he Court will not reward this type of tactical maneuvering").[6]

Not only do meritless recusal requests absorb energies better spent on resolving cases, but they also weaken the ability of federal district judges to control proceedings before them and prevent parties with meritless positions from obstructing the judicial process. *Cf. In re Judicial Misconduct*, 623 F.3d at 1102 (frivolous misconduct claim "diminishes the effectiveness of our system of justice"; "judges . . . may feel compelled to recuse even in light of unfounded allegations.").

This Court should support the district judge's refusal to bow under the pressures that Petitioners have brought to bear here, and signal to other members of the judiciary that they will be similarly supported. It should also send a signal to these and future litigants that judge-baiting, like bear-baiting, is not a risk-free sport. At a minimum, those who have leveled baseless charges here should suffer the reputational sting of this Court's rebuke.

---

[6] *See also* Andrew Longstreth, *ACLU Asks Federal Circuit Chief Judge to Recuse Himself from Controversial Gene Patenting Case – Before He's Even Been Assigned to Hear It*, AM. LAW. (Aug. 5, 2010), http://www.americanlawyer.com/PubArticleTAL.jsp?id=1202464312762 (describing a litigant's "pre-emptive strike" against a federal appellate judge perceived to be unlikely to rule in the litigant's favor).

14

Over time, baseless attacks and improper requests for removal of judicial officers erode the perceived integrity and impartiality of all U.S. judges, particularly when accompanied by media campaigns of the sort launched here. Because the legitimacy of the U.S. justice system is grounded in the faith that judicial officers discharge their duties with integrity, such attacks have the potential to undermine confidence in the U.S. court system and its processes.

## CONCLUSION

For the above reasons, the Chamber urges that Petitioners' meritless application to disqualify a justifiably well regarded and industrious trial judge be resoundingly denied.

Dated: July 29, 2013                    Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

Michael B. Mukasey
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000
Fax: (212) 909-6836

*Attorney for Proposed Amicus Curiae*
*Chamber of Commerce of the United States*
*of America*

15

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).  The brief contains 3,654 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The word count was determined by the word-count function of Microsoft Word 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Michael B. Mukasey

16