## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

**Docket Number(s)**: 13-772 _____     Caption [use short title]

**Motion for:** Supplement the Record and to Stay Proceedings

IN RE HUGO GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE PAYAGUAJE, Petitioners.

Set forth below precise, complete statement of relief sought:

Petitioners request permission to supplement the record on Petition

for Writ of Mandamus and to stay the proceedings in the District

Court pending disposition of the Petition.

_____

_____

**MOVING PARTY:** Hugo Gerardo Camacho Naranjo & Javier Piaguaje Payaguaje    **OPPOSING PARTY:** Chevron Corporation

☐ Plaintiff          ☑ Defendant
☑ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** James E. Tyrrell, Jr.    **OPPOSING ATTORNEY:** Randy M. Mastro

[name of attorney, with firm, address, phone number and e-mail]

| | |
|---|---|
| Patton Boggs LLP | Gibson Dunn & Crutcher LLP |
| One Riverfront Plaza, 6th Fl. | 200 Park Avenue, New York, NY 10166 |
| Newark, NJ 07102; 973-848-5600 | 212-351-4000 |
| jtyrrell@pattonboggs.com | rmastro@gibsondunn.com |

Court-Judge/Agency appealed from: The Honorable Lewis A. Kaplan - U.S. District Court for the Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Is oral argument on motion requested?    ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☑ Yes ☐ No  If yes, enter date: The Court has tentatively calendered oral argument in Nos. 11-1150 and 11-1264 for the week of 9/12/2011.

**Signature of Moving Attorney:**
/s/ James E. Tyrrell, Jr. _____ **Date:** 09/18/13 _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below?    ☑ Yes ☐ No
Has this relief been previously sought in this Court?    ☐ Yes ☑ No
Requested return date and explanation of emergency: Oral argument will occur

before this Court on September 26, 2013.  Trial is scheduled to

commence in the lower court on October 15, 2013.

Has service been effected?  ☑ Yes  ☐ No [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

**Form T-1080**

# 13-772

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

---

IN RE HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE,

Petitioners.

---

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(NO: 11-CV-0691-LAK)

---

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO FURTHER SUPPLEMENT THE RECORD ON PETITION FOR A WRIT OF MANDAMUS AND TO STAY PROCEEDINGS IN THE DISTRICT COURT PENDING DISPOSITION OF THE PETITION

---

JAMES E. TYRRELL, JR.
PATTON BOGGS LLP
1185 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
(646) 557-5100

– AND –

ONE RIVERFRONT PLAZA, 6TH FLOOR
NEWARK, NEW JERSEY 07102
(973) 848-5600

*Attorneys for Petitioners Hugo Gerardo Camacho Naranjo
and Javier Piaguaje Payaguaje*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

DEVELOPMENTS IN THE LOWER COURT ........................................................... 3

REASONS WHY A STAY SHOULD ISSUE ............................................................ 12

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Campbell v. Eastland,*
 307 F.2d 478 (5th Cir. 1962) ...............................................................11

*China Trade and Development Corp. v. M.V. Choong Yong*,
 837 F.2d 33 (2d Cir. 1987) ...............................................................11

*Chevron Corp. v. Naranjo,*
 667 F.3d 232 (2d Cir. 2012) ........................................................ passim

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*,
 400 Fed. Appx. 611 (2d Cir. 2010)....................................................13

*Hirshfield v. Bd. of Elections*,
 984 F.2d 35 (2d Cir. 1993) ...............................................................19

*Hunt v. Liberty Lobby, Inc.*,
 707 F.2d 1493 (D.C. Cir. 1983)...........................................................19

*Unionbancal Carop. & Subs. v. United States*,
 93 Fed. Cl. 166 (Fed. Cl. 2010) .........................................................19

*Weintraub v. Bd. of Ed. City of New York*,
 489 F. Supp. 2d 209 (E.D.N.Y. May 29, 2007).................................19


STATUTES

28 U.S.C. § 1292(b) .............................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 56(g) ............................................................................18

# INTRODUCTION

Before the Court is an expedited Petition for a Writ of Mandamus ordering the lower court's compliance with this Court's *Naranjo* Opinion and Mandate,[1] at the heart of which is the conclusion that Petitioners, foreign judgment creditors, have the right to seek recognition and enforcement of their Judgment in their forum of choice. As set forth in the Petition, the lower court reanimated Chevron's judgment "non-recognition" claim, contrary to the letter and spirit of this Court's Mandate, in two distinct ways. First, the lower court treated Petitioners' boilerplate "collateral estoppel" defense as an invitation to adjudicate the enforceability of the Judgment, and then refused to allow Petitioners to define or withdraw the defense. Second, the lower court found that, if Chevron prevails on its common-law claim, Chevron will be entitled to have the Judgment "set aside" under principles of equity.

When this Petition was filed, it was not entirely clear how a U.S. court would go about equitably "setting aside" a *foreign* judgment—there appears to be no precedent for it. But, with trial slated to begin October 15, 2013, what it means to *de facto* "set aside" a foreign judgment as a matter of equity has now come into sharper focus. Chevron has upped the ante and shown its hand, asking the district judge to grant several forms of equitable relief offensive to *Naranjo*.

---

[1] Abbreviated terms used herein have the same meanings as those set forth in the Table of Abbreviations included with the original Petition. (*See* Dkt. 1-1 at 6-7.)

1

Perhaps most stunning is that Chevron now seeks, on its common-law fraud and RICO claims, injunctive relief practically identical to the injunction vacated by this Court in *Naranjo*—now rebranded as a "fraud injunction" and a "RICO injunction."  Chevron aims to enjoin the Ecuadorian Amazon communities and everyone connected to them from benefitting in any way from any action, foreign or domestic, to enforce the Judgment.  Chevron further seeks to attach the Amazon communities' interest in any future recovery obtained through enforcement of the Judgment, and to impose a constructive trust on, or to require disgorgement of, any proceeds actually collected through enforcement.  Chevron also has refined the nature and scope of its fraud and RICO claims to make clear that what it really seeks is a ruling that the Judgment was "procured by fraud," purportedly rendering "fraudulent" any public statement defending the Judgment's legitimacy.  Indeed, Chevron alleges that Petitioners are liable for making false statements by arguing to foreign enforcement courts that the Judgment is legitimate.  In short, Chevron's RICO and common-law fraud claims are just re-packaged versions of the dismissed "non-recognition" claim intended to use a U.S. court to block foreign enforcement.  And all of this may be decided by the district judge in a bench trial.

The multiplication of Chevron's efforts to circumvent *Naranjo* adds to the gravity of this Petition.  Further decisions concerning the viability of Chevron's theories and requests for relief, which have the practical effect of "setting aside"

2

the Judgment, should be stayed pending disposition of the Petition. Ultimately, any further proceedings following this Court's ruling should be before another district judge—one who has not accepted Chevron's invitations to sidestep the letter and spirit of this Court's Opinion and Mandate, and who does not hold the intractable, erroneous view that "allowing the [Petitioners] to take the issue of recognizability and enforceability [of the Judgment] off the table in this case while preserving it in every other court in this and other nations would be to acquiesce in a blatant exercise in forum shopping." (A1457.)

Accordingly, Petitioners respectfully ask the Court to (a) supplement the record on this Petition so that it may consider Chevron's newly-announced theories and demands for relief in rendering its decision, and (b) enter a stay of proceedings before the lower court including, most importantly, the upcoming trial.

## DEVELOPMENTS IN THE LOWER COURT

*(1) Chevron seeks reinstatement of the injunction vacated by Naranjo*.  On August 30, 2013, Chevron submitted a proposed pretrial order, to which it attached "proposed injunctions" for the lower court to issue should Chevron prevail on its common-law fraud or RICO claims.[2] (Tyrrell Decl., Ex. 6.)  Chevron's proposed "fraud injunction" and "RICO injunction" are essentially the same:

---

[2] The lower court adopted Chevron's requests for relief in its Pretrial Order. (*See* Tyrrell Decl., Ex. 15 at 3.)

Defendants and any others acting on their behalf or in concert with them, are hereby enjoined from . . . undertaking any acts to, among other things, monetize or profit from the judgment rendered on February 14, 2011 . . . in the Provincial Court of Justice of Sucumbios, Ecuador (hereinafter the "Lago Agrio Case"), as modified or amended, or any other judgment that hereafter may be rendered in the Lago Agrio Case by that court or by any other court in Ecuador in or by reason of the Lago Agrio Case (collectively, a "Judgment"). Defendants and any others acting on their behalf or in concert with them, are further hereby enjoined from:

(1)     Filing or prosecuting any action for recognition or enforcement of the Judgment or for prejudgment seizure or attachment of assets based upon the Judgment in any court in the United States; and

(2)     Seeking or receiving any payment, compensation, or other benefit from the enforcement of the 2011 Judgment or any subsequent Judgment . . . .

This injunction shall bind all Defendants and all other persons in active concert with them, and who have actual or constructive notice of this Order.  Defendant Donziger is required under this injunction to give actual notice to all the Ecuadorian Plaintiffs, all other non-appearing codefendants, all counsel representing the Ecuadorian Plaintiffs in connection with the Judgment, and all counsel purporting to seek recognition or enforcement of the judgment in any jurisdiction.

(*Id*. at 2.)

Even assuming the lower court is empowered to block efforts to enforce foreign judgments in every U.S. state based on fraud and RICO claims—and it is not[3]—this injunction, on a closer look, goes beyond that.  The injunction would

---

[3] The axiom that a judgment creditor, and not his debtor, is entitled to choose the forum in which to litigate the enforceability of his judgment must apply equally

also bar the Amazon communities from deriving any benefit from enforcement, whether in a domestic or foreign jurisdiction. Even if the foreign court were to find the Judgment worthy of recognition, the Amazon communities would be barred from collecting. Presumably, it would even render meaningless the enforcement actions currently pending. But in *Naranjo*, this Court opined:

> [W]hen a court in one country attempts to preclude the courts of every other nation from ever considering the effect of that foreign judgment . . . the court risks disrespecting the legal system not only of the country in which the judgment was issued, but also those of other countries, who are inherently assumed insufficiently trustworthy . . . .[4]

That the proposed injunction does not *expressly* preclude foreign courts from "considering the effect" of the Judgment is irrelevant—neither did the Count Nine injunction.[5] With Chevron's new injunction, a foreign court might theoretically rule that the Judgment is entitled to recognition, only to be informed by Chevron

---

whether the creditor would choose to seek enforcement under the laws of California or the laws of Argentina. True, permitting a judgment debtor to preemptively sue his creditor in New York for alleged fraud in the procurement of the judgment, and to then obtain an injunction barring enforcement in any other U.S. jurisdiction, would not implicate *all* of the international comity concerns raised in this Court's *Naranjo* Opinion. But endorsing this course of action would turn judgment enforcement on its head by inviting debtors to run to New York to preempt enforcement elsewhere—a result the Court rightly deemed unacceptable in *Naranjo*. *See Naranjo*, 667 F.3d 232, 234, 241 (2d Cir. 2012).

[4] *See id.* at 244.

[5] "The fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, because such an order effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) (internal citations omitted).

that it can ignore the ruling because a New York court believes otherwise. This alone is wildly offensive to principles of comity. But what matters most is that the injunction has the practical effect of depriving foreign courts of the opportunity to assess the Judgment just like the injunction vacated in *Naranjo*.

***(2) Chevron seeks an attachment, a constructive trust, and damages to recover losses incurred in foreign enforcement proceedings.*** Chevron also seeks to "attach[]" and to "impos[e] . . . a constructive trust on," the Amazon communities' "interest in any recovery based on the Ecuadorian judgment . . . ." (Tyrrell Decl., Ex. 5 at 19.) And currently (*see infra* at 10-12), Chevron seeks damages to complement these anti-enforcement mechanisms. Chevron claims that it is entitled to

> not less than $113.8 million . . . for injury caused by Defendants efforts to enforce the fraudulent judgment, including: (a) $1 million to compensate it for attorneys' fees associated with defending against attempted enforcement of the fraudulent judgment in Canada; (b) not less than $1.2 million . . . for attempted enforcement of the fraudulent judgment in Argentina;[6] and (c) not less than $111.6 million . . . for

---

[6] Chevron seeks not only attorneys' fees and costs relating to enforcement efforts in Argentina, but also damages for the Lago Agrio Plaintiffs' "use[] [of] the Ecuadorian judgment to unjustly enrich themselves by embargoing Chevron's property." (Tyrrell Decl., Ex. 5 at 5.) But both an Argentine trial court *and* an intermediate appellate court found that an embargo against Chevron's assets was proper pursuant to Latin American treaties pertaining to the enforcement of foreign judgments. (*See* Tyrrell Decl., Exs. 7 & 8.) Argentina's highest court vacated the embargo after Chevron threatened to withhold its pledged $1.5 billion investment in the development of Argentina's shale oil and natural gas fields if the embargo remained in place. (Tyrrell Decl., Exs. 9 & 10.) If Chevron believes that it was damaged by the embargo entered by Argentine trial and appellate courts, whatever

injury caused by actual enforcement of the fraudulent judgment in Ecuador.[7]

(*Id.* at 18.)

In *Naranjo*, this Court observed that the Amazon communities "may seek to enforce that judgment in any country in the world where Chevron has assets." *Naranjo*, 667 F.3d at 246.  A New York court finding liability and awarding damages for asking a foreign court to assess the validity of the Judgment in an enforcement action cannot be reconciled with *Naranjo*.  Equally inconsistent with *Naranjo* is the notion that a New York court may order a foreign judgment creditor to pay back to his debtor any proceeds collected by virtue of the fact that a foreign court has deemed the judgment enforceable.

**(3) Chevron seeks to hold Petitioners liable for "fraud" because they have represented to foreign enforcement courts that their Judgment is legitimate.** Chevron intends to prove 15 supposed "frauds," all of which are premised on a "third-party fraud" theory whereby Chevron claims injury resulting from false statements that Petitioners made to others.[8]  (Tyrrell Decl., Ex. 11 at 10-11.)

---

relief Chevron is entitled to lies in Argentina—not in asking a U.S. court to award damages resulting from the decisions of foreign courts.

[7] The Amazon communities have not collected a penny in Ecuador; Chevron seeks damages relating to the freezing of its limited Ecuadorian assets.

[8] As discussed in the Petition, this Court has held that "fraud claims may not be premised on false statements on which a third party relied."  (Dkt. 1-1 at 29 (*quoting Fed. Treas. Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 400 Fed. Appx. 611, 613 (2d Cir. 2010)).)

Although some of Chevron's theories read narrowly, these are swallowed by other theories that more directly turn Chevron's common-law fraud claim into Count Nine *redux*.   Tracking the Recognition Act, Chevron seeks a verdict that Petitioners made "false statements or omissions of material fact concerning the fraudulent judgment obtained in Ecuador *that was, in fact, procured by fraud*." (*Id*. at 9 (emphasis added).)   In a similar vein, Chevron seeks a verdict that Petitioners made "false statements or omissions of material fact regarding the Ecuadorian judgment in a court filing *to a court outside the United States in connection with enforcement proceedings*." (*Id*. (emphasis added).)

In sum, Chevron asks a U.S. court to hold that the Judgment was "procured by fraud" and not entitled to respect, and then, on that basis, to hold foreign judgment creditors liable for statements they made—or for omissions—about the quality of their Judgment to a foreign court weighing an enforcement action.

*(4) Chevron intends to place the entire Ecuadorian judicial system on trial with its RICO and/or fraud claims*.   In opposing Petitioners' request for a stay below, Chevron posited that this Court's disposition of the Petition would not materially affect the scope of further proceedings in the lower court.   (Tyrrell Decl., Ex. 2 at 5.)   Chevron argued, in part, that the Ecuadorian judiciary as a whole will be on trial whether or not the lower court adjudicates the collateral estoppel defense.   (*See id*. at 7-8 ("[T]he Ecuadorian judiciary generally . . . [is]

8

corrupt, subject to bribery and intimidation, and unduly [sic] influence by the executive branch . . . .  All of this goes to show that the Ecuadorian judgment cannot be recognized under New York and federal law, of course, but it is also relevant to . . . Chevron's affirmative claims, regardless of whether or not Defendants' collateral estoppel defense remains at issue in this action.").)  Chevron's proposed trial exhibit list confirms its intent to place the Ecuadorian judiciary on trial, listing exhibits such as "[t]imeline of key events relating to the Ecuadorian judiciary" (Tyrrell Decl., Ex. 12 at PX 2132), and "[s]ummary chart of judicial impartiality across Latin American countries" (*id*. at PX 2154).  Similarly, Chevron's trial witness list includes three experts who will testify that the Ecuadorian judiciary does not offer due process or impartial tribunals.  (*See* Tyrrell Decl., Ex. 5 at 12, 13, 15; *see also* Dkts. 39-08 – 39-11.)

This Court observed in *Naranjo* that it is a "particularly weighty matter" for a U.S. court in one country to condemn another country's legal system, an undertaking that may nevertheless be unavoidable "when a party seeks to invoke the authority of our courts to enforce a foreign judgment."[9]  The Court concluded that a declaratory action seeking to denounce a foreign judgment on the basis of fraud provides insufficient justification for the public denigration of a foreign judiciary at the hands of a disgruntled litigant.  There is no reason for the policy

---

[9] *Naranjo*, 667 F.3d at 244.

9

analysis to change when the vehicle for judicial denigration is instead a preemptory common-law fraud or RICO claim seeking to enjoin enforcement of a foreign judgment allegedly procured by fraud.

(5) ***Chevron may only seek equitable relief to try to avoid a jury trial.*** Chevron has strung out its decision on whether to abandon its damages claims and pursue only equitable relief, allowing it to argue for a bench trial on all issues.  On July 18, 2013, Chevron's counsel represented to the lower court: "[t]here is still some consideration, your Honor, on our part, *in the event [Donziger's] counterclaims . . . were dismissed,* of whether equitable relief would suffice in this case.  So there is that possibility."  (*See* Dkt. 139-05 at 21:21-24 (emphasis added).)

Several days later, the district judge dismissed Donziger's counterclaims. (*See* Dkt. 139-06.)   Yet, when Chevron submitted its proposed pretrial order roughly one month later, on August 30, 2013, Chevron again stated that it "is considering seeking only equitable relief on its pending claims, in which event the case would be tried to the Court, not a jury. . . . If Chevron proceeds in this fashion, *it will be addressed in the bifurcation motion that Chevron is to file by September 8, 2013*."  (Tyrrell Decl., Ex. 5 at 6 (emphasis added).)

In its September 8 bifurcation motion, Chevron announced that it would seek only equitable relief against the Lago Agrio Plaintiffs, but reserved for itself

until the end of September to decide whether to do the same as to Donziger: "As for Donziger . . . Chevron commits that it will apprise the Court before the end of September whether it will seek only equitable relief against him at a bench trial, as *unfolding events and resolution of outstanding issues may potentially bear on that decision*."  (Tyrrell Decl., Ex. 3 at 1 (emphasis added).)

Donziger then sought to compel Chevron to explain why it should not have to reveal immediately—now only 30 days from trial—whether it intends to drop its damages claims and seek a bench trial.  (Tyrrell Decl., Ex. 13.)  In response, Chevron neither unveiled its decision nor explained the "unfolding events" or "outstanding issues" delaying that decision.  (*See* Tyrrell Decl., Ex. 14.)  The lower court nevertheless denied the motion, opining that any inconvenience Petitioners might suffer by not learning whether there will be a bench trial or jury trial until 15 days before that trial begins is offset by the "enormous benefits" to Petitioners in the event of a bench trial—*i.e.*, they would no longer be faced with the prospect of damages.[10]  (*See* Tyrrell Decl., Ex. 16 at 8.)  The lower court added that a plaintiff such as Chevron "could even try all or most of its case before a jury, drop any

---

[10] There is a reason that Chevron is giving serious consideration to abandoning its enormous damages claims, and it is not because Chevron does not enjoy money—or holding the threat of crushing debt over Donziger's head.  Chevron's primary goal is and always has been blocking enforcement.  Because securing a bench trial before this particular district judge instead of a jury trial would be a *coup* for Chevron in service of that goal, it appears Chevron may be willing to sacrifice its damages claims.

prayer for damages late in the proceedings (perhaps even while a jury was deliberating), and properly insist upon a decision by the trial judge rather than the jury." (*Id*. at 5 n.12.)

Perhaps, with oral argument on this Petition pending, Chevron is loathe to end the charade that its remaining claims are meant to serve any purpose other than blocking enforcement of the Judgment through equitable relief.

* * * * *

In sum, Chevron (a) intends to prove that the Judgment was "procured by fraud" in a flawed judicial system; (b) demands nullification of the Judgment via injunctive and other equitable relief essentially barring all enforcement efforts and requiring the Amazon communities to pay back to Chevron any proceeds collected; and (c) seeks to proscribe enforcement by, *inter alia*, demanding recompense for expenditures and other losses in connection with enforcement proceedings. Petitioners respectfully request permission to supplement the record with the foregoing developments, which, as further explained below, amplify the need for a stay of proceedings in the lower court pending disposition of the instant Petition.

## <u>REASONS WHY A STAY SHOULD ISSUE</u>

The Court must consider four factors in determining whether a stay is appropriate.[11]  Each factor weighs in favor of the Court's entry of a stay here.

---

[11] Those factors are: (1) whether there is a substantial possibility that the Petition will be granted; (2) whether there exists a risk of irreparable injury to Petitioners

12

*(1) A stay serves the public interest.*  The public interest element of the stay analysis is sometimes treated as an afterthought by litigants.  But in this case, it is particularly compelling.  The threat of irreparable harm to Petitioners themselves is very real, but the threat of harm to international judicial relations and the public perception of this nation's courts is equally acute, if not more so.

A stay will allow the Court to determine whether the forced adjudication of the Judgment's enforceability, either via the "collateral estoppel" defense or Chevron's affirmative claims and desired relief, is equally antithetical to the framework for foreign judgment enforcement, and just as offensive to international comity as the dismissed Count Nine and its attendant injunction.  A stay, at least of the trial, may be the *only* way to prevent harm to the reputation of U.S. courts abroad.  That injury manifests—at the latest—the moment Chevron presents its declaration of non-recognition, its injunction, its attachment order, etc., to a foreign court presiding over the Amazon communities' enforcement actions, alerting the court that its analysis of enforcement under its own nation's laws is for naught because the district court in New York has spoken.

A stay will also preserve public confidence in the judiciary by suspending further rulings in a case subject to intense public scrutiny by a lower court

---

absent a stay; (3) whether Chevron may be significantly harmed by a stay; and (4) whether the stay would be inconsistent with the public interest.  *See*, *e.g.*, *Hirshfield v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993).

exhibiting an unwillingness to follow this Court's Mandate, partiality, a lack of regard for this Court's binding precedent, and an aggrandized view of its role in the international juridical sphere.[12]

**(2) *Petitioners are likely to succeed on the merits of the Petition.*** For the reasons stated in the Petition and subsequent submissions, Petitioners are likely to prevail on the merits of these mandamus proceedings.  There is little point to another rehash here, except to note that the developments outlined in this motion render the need for, and likelihood of obtaining, mandamus relief even clearer.

For example, to push this Court's scrutiny further down the road, Chevron cast as "hypothetical" the lower court's opinion that it possesses the equitable authority to set aside a foreign judgment that a creditor has not presented for recognition in New York as relief on a fraud claim.[13]  (*See* Dkt. 111 at 14.)  The lower court also sidestepped its ruling that an equitable "set aside" is available to

---

[12] That Ecuadorian courts have felt compelled to fire back at the lower court (*see* A1322-23; A1334), as well as the fact that another U.S. Circuit Court of Appeals once issued *dicta* about disparaging foreign judicial systems aimed at the lower court (*see* Dkt. 39-03 at Ex. H), are a testament to the latter point.

[13] In fact, before this Petition was filed, Chevron defended the viability of its fraud claim on the basis that it sought other relief *in addition to* setting aside the Judgment: "[the Lago Agrio Plaintiffs'] argument proceeds from a flawed premise—namely, that the liability for the amount of the judgment represents the *only* harm Chevron has suffered as a result of the defendants' fraud on the Lago Agrio court.  *Chevron is not merely seeking to prevent the LAPs from enforcing their judgment by having it set aside* . . . .  Chevron pleads injury based on numerous *other* economic injuries it has suffered as a foreseeable result of the defendants' multiple acts of fraud . . . ."  (Tyrrell Decl., Ex. 4 at 26 (emphasis added).)

14

Chevron.[14]   But in the final analysis, the back-pedaling and semantics are inconsequential.   By demanding injunctions and equitable relief blocking enforcement, attaching judgment proceeds, and imposing a constructive trust on proceeds collected through enforcement, Chevron is without a doubt seeking to "set aside" the Judgment, albeit without naming it that.[15]   Like Chevron's and the lower court's attempt to litigate "non-recognition" under the pretext of collateral estoppel, the adjudication of Chevron's newer innovations to block foreign judgment enforcement—regardless of the outcome—is an offense to this Court's *Naranjo* Mandate and Opinion.

   **(3) Petitioners will suffer irreparable injury absent a stay.**  Should the case proceed to a final disposition below before this Court rules on the merits of the Petition, Chevron will be free to employ the improper rulings and relief it seeks to irreversible effect abroad.  Even if this Court's disposition of the Petition were to

---

[14] In denying Petitioners' request for a stay, the lower court—apparently with this Court as its intended audience—coyly observed the obvious: "*The complaint* seeks damages and equitable relief. . . . It does not seek to have this Court 'set aside' the Judgment." (Tyrrell Decl., Ex. 1 at 14 (emphasis added).)  But as the lower court well knows, whether Chevron expressly requests a "set aside" in its Complaint is neither here nor there.  Before this Petition was filed, the lower court, without regard to the particulars of the Complaint, found that Chevron would *unquestionably* be entitled to an equitable "set aside" should it prevail on its fraud claim.  (*See* A1608-11; *see also* Dkt. 1-1 at 25-26; Dkt. 139-24 at 24.)  And in any event, Chevron's Complaint includes an open-ended request for "other legal and equitable relief as the Court may deem Chevron is entitled to receive." (A791.)

[15] The lower court adopted Chevron's requests for relief, as well as its "fraud" theories, in its pretrial order.  (*See* Tyrrell Decl., Ex. 15 at 3.)

nullify in whole or part the lower court's rulings, as a practical matter, the damage would already be done.[16]   Case in point: although this Court vacated the district court's Count Nine preliminary injunction opinion "in its entirety" (A1063)—and though the D.C. Circuit has warned Chevron that it cannot properly urge other courts to rely on the "findings" contained in the vacated opinion—Chevron touts even *that* opinion internationally in an attempt to interfere with foreign courts' consideration of enforcement.  (*Compare* Dkt. 52-19 at 3-4 (D.C. Circuit vacating lower court's crime-fraud ruling because it relied on findings contained in the district court's preliminary injunction opinion) *with* Dkt. 52-20 at 6 & 39 ("TAB A") (Chevron representing to Canadian court that "[t]he Southern District of New York . . . ha[s] already expressed serious doubt about the enforceability of the

---

[16] *Cf. Campbell v. Eastland*, 307 F.2d 478, 480, 487-88 (5th Cir. 1962) (where district court granted taxpayer discovery in civil action for a tax refund and denied IRS's request for a stay pending appeal, appellate court reversed, finding that district court should have stayed its ruling in light of its potential effect on related criminal proceeding: "Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to *prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding.*") (emphasis added); *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1498-99 (D.C. Cir. May 13, 1983) (noting that "stays are often desirable in order to avoid[] the *complicated unraveling* that might become necessary if a judgment . . . is overturned on direct review.") (emphasis added) (internal quotations omitted).

Ecuador Judgment," citing and attaching vacated preliminary injunction opinion).)[17]

Petitioners will also be harmed through the needless expenditure of resources litigating issues that may well disappear upon resolution of this Petition.[18] In response to this argument below, Chevron and the lower court took the position that the crystallization of Chevron's claims has marginalized the importance of "collateral estoppel"—*i.e.*, the fact that adjudicating Chevron's RICO and fraud claims will practically be the equivalent to adjudicating "collateral estoppel" means that there is no efficiency to be gained from waiting for this Court's decision on the Petition. (*See* Tyrrell Decl., Ex. 2 at 3-9; Ex. 1 at 13 ("[I]t

---

[17] Chevron also cited the vacated preliminary injunction opinion in support of its opposition to enforcement in Brazil, without noting that the opinion was vacated. (*See* Tyrrell Decl., Ex. 52-21 at ¶ 203.) Consistent with Chevron's (and the lower court's) efforts to condemn the Lago Agrio Plaintiffs for choosing to enforce their Judgment in jurisdictions other than New York, Chevron has represented to the Brazilian court that the filing of an enforcement proceeding there is an improper attempt to evade the U.S. courts, the "only courts competent to examine a request for confirmation of the Ecuadorian judgment . . . ." (*Id*. at ¶ 6.)

[18] *See, e.g*., *Weintraub v. Bd. of Ed. City of New York*, 489 F. Supp. 2d 209, 222 (E.D.N.Y. May 29, 2007) (staying proceedings pending appeal on the grounds that pending appellate review "may advance the ultimate termination of this litigation," and where proceeding absent guidance from this Court could "result[] in a substantial waste of resources on the part of the Court and the parties to this action."); *Unionbancal Corp. & Subs. v. United States*, 93 Fed. Cl. 166, 167-68 (Fed. Cl. 2010) (staying proceedings because "it only makes sense to obtain the guidance from the Federal Circuit's legal rulings and their application to a similar fact pattern and transactional structure before commencing with a lengthy, expensive trial. The Federal Circuit's decision will most likely help clarify and simplify evidence to be presented at trial and will conserve judicial resources.").

is useful to appreciate the very limited part of the case that could be affected by the outcome of the mandamus petition.").)[19]  Chevron and the lower court could not be more wrong: Chevron's recent maneuvers make a stay more critical, not less so. Where once it was clear that certain aspects of the litigation were at odds with the *Naranjo* Mandate, the infection is more pervasive.  Notwithstanding Chevron's and lower court's myopic interpretation, it is apparent that, if the Petition is successful in its entirety, both the matters to be tried and the district judge presiding over them will be different.

   ***(4) A stay will not prejudice to Chevron.***  Chevron will suffer no cognizable prejudice as the result of a stay.  According to Chevron, the "prejudice to Chevron

---

[19] The lower court's *current* attempt to marginalize the "collateral estoppel" issue cannot be reconciled with the fervor with which it has forced Petitioners to litigate the defense against their will *before* the Petition was filed.  When Petitioners first explained that they had not invoked judgment recognition proceedings by raising "collateral estoppel," the lower court devoted 25 pages to explaining why Petitioners *must* be compelled to litigate the bona fides of the Judgment in New York.  (*See* A1387; *see also* Dkt. 1-1 at 20-27.)  And when Petitioners later timely moved to amend their pleadings so as to withdraw the collateral estoppel defense entirely, the lower court forbid it, reiterating that it would be untenable to let Petitioners ask other courts around the world to weigh in on enforcement, but prevent the lower court from doing so.  (*See* A1548-1549; *see also* Dkt. 1-1 at 22-28.)  Incredibly, the lower court is now feigning as though Petitioners can "simply elect[] not to press [the defense] at trial, which of course is their option."  (Tyrrell Decl., Ex. 1 at 15 n.50.)  Petitioners, of course, have never "pressed" the defense, and yet the lower court has repeatedly said that Chevron is nonetheless entitled to an adjudication of it.  Notwithstanding this potential contradiction in a one-sentence footnote buried in an order on a stay motion, the circumstances are not changed—Chevron has asked, in fact, that the defense be tried to the court, not a jury, after the completion of its affirmative case.  (*See* Tyrell Decl., Ex. 3 at 6.)

caused by delay is precisely the same as the value of delay to Defendants—it gives them more time to continue their extortionate scheme without a reckoning for their illegal conduct." (Tyrrell Decl., Ex. 2 at 9.)   Chevron adds that its claimed expenditures in connection with foreign enforcement proceedings "demonstrate that Defendants can cause Chevron substantial economic harm on the basis of their fraudulent judgment . . . ."   (*Id.*)   But Chevron is not entitled to preempt enforcement in Petitioners' chosen jurisdictions—labeling enforcement an "extortionate scheme" does not change that—and therefore cannot be prejudiced by "delaying" relief to which it is not entitled.   Nor can Chevron, consistent with *Naranjo*, claim prejudice in having to oppose enforcement actions.[20]   In the simplest terms, if this Petition has merit, Chevron's "prejudice" claim does not.

For its part, the lower court's conception of prejudice to Chevron is a study in contradiction, archetypal of the dilemma Petitioners have faced in the lower court since the outset:  damned if we do, damned if we do not.  On one hand, the lower court denied Petitioners' application for a stay on the basis that "there is much that should and can be done before this case is finally adjudicated . . . . There is no reason why those tasks should not proceed . . . ."   On the other hand, the lower court excoriated Petitioners for not requesting a stay *immediately upon filing*

---

[20] If Petitioners are executing an "extortionate scheme" that requires "reckoning," Argentine, Brazilian, and Canadian courts should be presumed competent to assess Chevron's charges and act accordingly.  Chevron's "prejudice" argument, like its broader legal strategy, rests on the opposite presumption.

*the Petition*, characterizing their application as a "[l]ast [m]inute [p]loy [t]hat [c]omes [t]oo [l]ate." (Tyrrell Decl., Ex. 1 at 20.)  The lower court concluded that Petitioners should have requested a stay "long ago.  Having proceeded as they have for so many months, and thus imposed such substantial burdens and costs on their adversary and the Court . . .  defendants have no equitable claim to a last minute delay . . . ." (*Id.* at 21.)  The lower court thus faulted Petitioners for requesting a stay that would impede only a trial and a few remaining pretrial matters, yet, at the same, faulted Petitioners for not seeking to stay all proceedings five months earlier. Petitioners in fact attempted to follow the most reasonable and non-prejudicial course possible.  Petitioners did not ask for a stay immediately upon filing the Petition because that move would have been received, perhaps justifiably so, as presumptuous and overreaching.  Petitioners sought to expedite this Petition (*see*, *e.g.*, Dkt. 52-01), and waited until oral argument was calendared before seeking a stay. (*See* Dkt. 152.)  This course has allowed the case to advance through discovery and further, so that any remaining issues to be tried may occur expeditiously once the Petition is resolved.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court supplement the record on the Petition, and stay further proceedings in the lower court pending resolution of the Petition.

Dated: September 18, 2013      Respectfully submitted,

By:    */s/ James E. Tyrrell, Jr.*
         James E. Tyrrell, Jr.
         PATTON BOGGS LLP
         1185 Avenue of the Americas, 30th Floor
         New York, New York 10036
         (646) 557-5100

         – AND –

         One Riverfront Plaza, 6th Floor
         Newark, New Jersey  07102
         (973) 848-5600

         *Attorneys for Petitioners Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*

21