# 13-772-cv

IN THE

# United States Court of Appeals

*for the*

# Second Circuit

HUGO GERARDO CAMACHO NARANJO,
JAVIER PIAGUAJE PAYAGUAJE,
*Petitioners*,

v.

CHEVRON CORPORATION,
*Respondent*,

STEVEN R. DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER,
DONZIGER & ASSOCIATES, PLLC,
*Movants*.

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**RESPONDENT CHEVRON CORPORATION'S
OPPOSITION TO PETITIONERS' MOTION TO STAY
PROCEEDINGS IN THE DISTRICT COURT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Respondent
Chevron Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

ARGUMENT ...........................................................................................4

    A.   Defendants' Complaints About Chevron's Proposed Form of Injunctive Relief Are Premature and Not a Ground for Mandamus. ..........4

    B.   Defendants' Complaints About Chevron's Proposed Injunction Are Premised on a Fundamental Mischaracterization of *Naranjo* .....................6

    C.   The Court Should Deny Defendants' Latest Attempt at Delay. ...............11

        1.   A Stay Would Harm the Public Interest..............................................12

        2.   Defendants Will Not Suffer Irreparable Injury Absent a Stay............16

        3.   Chevron Would Be Prejudiced by a Stay............................................18

        4.   Defendants Are Unlikely to Prevail on the Merits.............................20

CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,
   920 F.2d 1127 (3d Cir. 1990) ...............................................................................6

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) ................................................................................2

*Campbell v. Eastland*,
   307 F.2d 478 (5th Cir. 1962) ...................................................................... 17, 18

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004)............................................................................................20

*Chevron Corp. v. Banco Pichincha*,
   No. 11-24599 (S.D. Fla. Feb. 27, 2013) ...............................................................3

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ....................................................................... passim

*Citibank, N.A. v. Hakim*,
   No. 92 CIV. 6233 (MBM),
   1993 WL 481335 (S.D.N.Y. Nov. 18, 1993)......................................................18

*F.T.C. v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980)............................................................................................16

*Hunt v. Liberty Lobby, Inc.*,
   707 F.2d 1493 (D.C. Cir. 1983).........................................................................18

*In re Albert*,
   No. 99-31520, 2002 WL 1432663 (Bankr. S.D.N.Y. June 20, 2002)...............18

*In re Edwards*,
   375 F.2d 108 (2d Cir. 1967) ................................................................................1

*In re Stake Center Locating, Inc.*,
   717 F.3d 1089 (9th Cir. 2013) .............................................................................5

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) ................................................................................12

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) ................................................................2

*Ransmeier v. Mariani*,
  718 F.3d 64 (2d Cir. 2013) ...............................................................13

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) ................................................................6

*Unionbancal Corp. v. United States*,
  93 Fed. Cl. 166 (Fed. Cl. 2010) ........................................................18

*United States v. Carson*,
  52 F.3d 1173 (2d Cir. N.Y. 1995)....................................................2, 5

*United States v. Private Sanitation Indus. Ass'n*,
  44 F.3d 1082 (2d Cir. 1995) ........................................................ 12, 19

*Weintraub v. Board of Ed. City of New York*,
  489 F. Supp. 2d 209 (E.D.N.Y. 2007) .............................................18

## Statutes

18 U.S.C. § 1961 ............................................................................ 2, 10

18 U.S.C. § 1964(a) ..................................................................... 2, 3, 10

28 U.S.C. § 1292(b) ...........................................................................20

28 U.S.C. § 1782................................................................................17

## PRELIMINARY STATEMENT

Defendants' supplemental material has no colorable connection to any basis on which mandamus could be grounded, or any stay ordered.  They take aim at a mere proposal for post-trial equitable relief that Chevron has lodged in the court below—relevant only if Chevron prevails on its RICO or fraud claims, and then only if the district court, exercising its discretion under all the circumstances, finds it warranted and justified by the evidence at trial.  Defendants' assertion that the district court has already "adopted" the injunctive relief that Chevron has proposed is plainly false.  Chevron has merely submitted proposed language for such relief during the normal course of pre-trial proceedings, for consideration if justified and, of course, subject to any objections and comments that Defendants might submit to the district court when, as, and if the court is inclined to exercise its discretion to award some form of equitable relief.  Naturally, if the district court determines such relief is warranted, and if, after hearing from Defendants as to the form of such relief, Defendants still object to what is actually ordered, they have the right to appeal to this Court.  But it is inappropriate for a mandamus proceeding to be employed to seek an advisory appellate opinion before trial has even begun.  *See In re Edwards*, 375 F.2d 108, 109 (2d Cir. 1967) (Friendly, J., concurring) ("[M]andamus will not lie 'for the purpose of pressing a premature appeal.'  We should deny on that simple and satisfying ground.").

Although earlier today the Court granted Defendants' motion to supplement the record with Chevron's proposed injunction, in reality that material is irrelevant to Defendants' petition and cannot justify their motion to stay all proceedings in the district court.  There is nothing remarkable, much less mandamus-worthy, about Chevron's proposed equitable relief, many of the operative provisions of which come straight from the RICO statute itself—a fact Defendants try to hide with ellipses.  *Compare* Mot. at 4, *with* 18 U.S.C. § 1964(a), *and* Tyrrell Decl., Ex. 6 at 3–4.  There is no question that, as this Court recently explained, "[a] 'federal court sitting as a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere.'"  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 (2d Cir. 2012), *petition for cert. filed*, No. 12-1494 (June 24, 2013).  And this Court has approved similar injunctions in actions brought by the Government.  *See, e.g.*, *United States v. Carson*, 52 F.3d 1173, 1184–85 n.10 (2d Cir. N.Y. 1995) (approving injunction enjoining defendant "from committing any acts of racketeering activity").

This Court's decision in *Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012), does not change these basic principles.  *Naranjo* addressed only Chevron's severed declaratory judgment action, not the RICO and fraud claims that are at issue in the upcoming trial.  Indeed, this Court expressly noted in *Naranjo* that it was not reaching in any way Chevron's RICO and fraud claims.  *See id.* at 238 n.8

2

("We decide only those issues that relate to the severed declaratory judgment claim and the district court's rulings thereon."). *Naranjo*'s discussion of "international comity" was not the primary basis for the decision, which was carefully limited to the Court's analysis of New York's Recognition Act.[1] And *Naranjo* does not stand for the proposition that fraudulent and extortionate schemes that involve corrupt foreign judicial proceedings are entitled to blanket immunity. It cannot be questioned that a federal court has the power to issue equitable relief preventing those over whom it has jurisdiction from furthering and enjoying the fruits of an illegal scheme. Indeed, RICO itself specifically authorizes such relief. *See* 18 U.S.C. § 1964(a). Crafting remedies to prevent Defendants from engaging in further acts of racketeering and fraud—especially where, as here, the evidence at trial will show that the enterprise was conceived, funded, and largely executed in the United States, under the direction of New York lawyer Steven Donziger, targeting an American victim—is neither unusual nor precluded by *Naranjo*.[2]

---

[1]  *Naranjo*, 667 F.3d at 244 ("To resolve the dispute before us, we need only address whether the statutory scheme announced by New York's Recognition Act allows the district court to declare the Ecuadorian judgment non-recognizable, or to enjoin plaintiffs from seeking to enforce that judgment. Because we find that it does not, the injunction collapses before we reach issues of international comity.").

[2]  "Here, the matter pertains to a large scale fraud upon an American corporation—and a related multibillion dollar judgment—by and between persons in the United States using funds that likely originated in the United States." Dkt. 122-14 at 26 (recommendation of Southern District of Florida magistrate); *see also Chevron Corp. v. Banco Pichincha*, No. 11-24599, Dkt. 129 at 2 (S.D. Fla. Feb. 27, 2013) (adopting magistrate's "clear, cogent, and compelling" recommendation).

Defendants' request for a stay of the district court proceedings has no merit. Unable to rebut what the Southern District of Florida described as the "mounds of evidence" of their wrongdoing (Dkt. 122-14 at 4), Defendants resort to ever more tendentious maneuvers to delay their trial on the merits. A stay of proceedings would reward Defendants' obstructionist tactics, disserving the public interest. Defendants cannot show irreparable injury, since they are not obligated to press their collateral estoppel affirmative defense at trial, and they fail to identify any significant evidence that would be irrelevant if that defense—the subject of their writ petition—were out of the case. Indeed, Chevron will still be proving fraud here regardless of whether Defendants press their affirmative defense. Conversely, a stay would prejudice Chevron, which is entitled to go forward with the long-scheduled trial of its claims.

In sum, trial is still to come, Chevron has not yet prevailed on the merits of its claims, and thus the district court has not entered (and may never enter) any injunctive relief. And even if, following a trial, the district court were to issue the injunction proposed by Chevron, an appeal would lie to correct any alleged errors. Consequently, the Court should deny Defendants' motion.

## ARGUMENT

### A.   Defendants' Complaints About Chevron's Proposed Form of Injunctive Relief Are Premature and Not a Ground for Mandamus.

Defendants ask this Court to intervene in pending litigation below—just

4

weeks before trial—and to issue an advisory opinion as to the validity of equitable relief that Chevron has proposed in its pretrial submission, but which the district court has not even considered, much less entered.  That is because Chevron has not yet prevailed on the merits.  Defendants' complaints about Chevron's proposed injunction are therefore premature and not a proper basis for mandamus relief.  *See, e.g.*, *In re Stake Center Locating, Inc.*, 717 F.3d 1089, 1089–90 (9th Cir. 2013) (denying writ petition seeking compensation under the Crime Victim's Rights Act as "unripe" and "premature" where the defendant had not yet been sentenced).

On September 18, 2013, Chevron submitted its proposed pretrial order, which stated, under the category of "Relief Sought," that, among other things:

> Chevron anticipates that it will seek an anti-racketeering injunction, prohibiting Defendants and their co-conspirators from continuing or attempting to profit from their pattern of racketeering activity.  *U.S. v. Carson*, 52 F.3d 1173, 1183–85 (2d Cir. 1995).  Chevron also anticipates that it will seek an injunction prohibiting Defendants and their co-conspirators from continuing acts of fraud or in furtherance of fraud.  It may further seek an order attaching Defendants' assets, including their interest in any recovery based on the Ecuadorian judgment, and the imposition of a constructive trust on, or disgorgement of any compensation or recovery flowing from their racketeering activity.

> Chevron reserves the right to amend, revise, and supplement the relief sought, including equitable relief and the form of the proposed injunctions attached hereto as Exhibit D.

Tyrrell Decl., Ex. 5 at 19.  Chevron's Exhibit D, in turn, proposed the terms of a "RICO Injunction" and separate terms for a "Fraud Injunction."  Tyrrell Decl., Ex. 6.  Chevron also noted that "[t]he precise nature of the appropriate equitable relief

will depend on the record developed at trial, and on developments in Defendants' ongoing extortion and enforcement campaign." Tyrrell Decl., Ex. 5 at 19.

The district court has not "adopted" *any* form of equitable relief, and it may never do so.[3] But assuming for the sake of argument that Chevron eventually prevails at trial and that the district court ultimately issues an injunction identical to the one Chevron has proposed, this is what appeals are for. *See, e.g.*, *SEC v. Rajaratnam*, 622 F.3d 159, 169 (2d Cir. 2010) (to obtain mandamus relief "the party seeking issuance of the writ must have no other adequate means to attain the relief it desires" (quotation marks and citation omitted)). Mandamus does not lie to secure interlocutory advisory opinions from appellate courts weeks before trial. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1134 (3d Cir. 1990) ("We decline to pursue the extraordinary remedy of mandamus in order to issue such an advisory opinion."). To do otherwise would subject courts of appeals to incessant, piecemeal applications.

## B. Defendants' Complaints About Chevron's Proposed Injunction Are Premised on a Fundamental Mischaracterization of *Naranjo*.

Nothing in *Naranjo* precludes the district court from granting Chevron equitable relief if Chevron prevails at trial on its RICO and/or fraud claims. Defendants' preemptive attacks on Chevron's proposed injunction ignore both the express

---

[3]    *Compare* Mot. at 3 n.2 & 15 n.15 ("The lower court adopted Chevron's requests for relief . . . in its pretrial order."), *with* Tyrrell Decl., Ex. 15 at 3 ("Section VIII of the Chevron PTO contains its position with respect to the relief sought.").

6

limitations that this Court placed on its decision in *Naranjo*, as well as the context in which that case was decided.

Defendants claim *Naranjo* created a blanket legal rule absolutely barring U.S. courts from entering any injunctive relief that might restrain a judgment creditor from monetizing a foreign judgment, regardless of the underlying claims at issue. *See* Mot. at 1, 7. But *Naranjo* did no such thing. It did not purport to address the propriety of all injunctions that might affect a foreign judgment creditor's collection efforts. Rather, this Court was careful not to issue a broad holding—let alone a *mandate*—addressing "international comity" or the permissible scope of injunctive relief in all cases:

> To resolve the dispute before us, we need only address whether the statutory scheme announced by New York's Recognition Act allows the district court to declare the Ecuadorian judgment non-recognizable, or to enjoin plaintiffs from seeking to enforce that judgment. Because we find that it does not, the injunction collapses *before we reach issues of international comity*.

*Naranjo*, 667 F.3d at 244 (emphasis added).

Moreover, even *Naranjo*'s comity analysis was tied to Chevron's claim for declaratory relief under New York's Recognition Act, as the Court linked its comity discussion directly to its construction of the Act. *See id.* at 243 ("Nothing in the language, history, or purposes of the Act suggests that it creates causes of action by which disappointed litigants in foreign cases can ask a New York court to restrain efforts to enforce those foreign judgments against them . . . ."); *id.* at 244 ("Noth-

ing in the New York statute, or in any precedent interpreting it, authorizes a court

to enjoin parties holding a judgment issued in one foreign country from attempting

to enforce that judgment in yet another foreign country."). *Naranjo* did not evalu-

ate whether an injunction would have been permissible had it been issued under

other laws (such as RICO or fraud) intended to remedy fraudulent and extortionate

schemes. Indeed, the Court could not have been clearer that it decided "only those

issues that relate to the severed declaratory judgment claim and the district court's

rulings thereon." *Id.* at 238 n.8.[4]

Ignoring the context of *Naranjo*'s discussion of comity, Defendants would

expand this Court's cautionary language about a court assuming the role of "defini-

tive international arbiter of the fairness and integrity of the world's legal systems"

into a prohibition on equitable relief that impinges, in any way, upon foreign court

proceedings—regardless of the cause of action underlying that relief. *Id.* at 244.

They claim "[t]here is no reason for the policy analysis to change when the vehicle

---

[4]   Defendants' current effort to expand the holding of *Naranjo* is at odds with
their prior characterization of the decision—before the U.S. Supreme Court, in op-
posing Chevron's petition for a writ of certiorari—as a narrow decision turning on
an interpretation of state law. *See, e.g.*, Mastro Decl., Ex. 1 at 21 ("[T]he Second
Circuit's decision turned largely on its careful interpretation of a New York stat-
ute."); *id.* at 24 ("Based on its interpretation of the Recognition Act, the Second
Circuit held that Chevron had no substantive legal right to the global anti-
enforcement declaration and worldwide injunction it sought."). After successfully
opposing Chevron's petition by arguing that *Naranjo* was a narrow decision that
"turned largely" on the interpretation of the Recognition Act, Defendants now take
the opposite position and claim that *Naranjo*'s mandate somehow bars relief on
Chevron's RICO and fraud claims.

for judicial denigration is instead a preemptory common-law fraud or RICO claim seeking to enjoin enforcement of a foreign judgment allegedly procured by fraud." Mot. at 9–10. But *Naranjo*'s "policy analysis" hinged upon New York's legislative intent in adopting the Recognition Act. RICO and common-law fraud are designed to stop wrongful conduct and for that reason stand wholly apart from the Recognition Act. As numerous U.S. courts have recognized, Chevron has amassed strong evidence of Defendants' criminal or fraudulent conduct. *See, e.g.*, Dkt. 122-12 at 12 (Western District of North Carolina: "[W]hat has blatantly occurred in this matter would in fact be considered fraud by any court."). If this is proven at trial, Chevron is entitled to relief sufficient to prevent further acts of racketeering and fraud, including possibly an injunction.[5]

There is nothing improper, let alone *per se* impermissible under *Naranjo*, about Chevron seeking an injunction to prevent Defendants from continuing to violate the law. And that is all Chevron's proposed injunction would do. The pro-

---

[5]   Thus, *Naranjo*'s "policy analysis" does not merely "change," it does not apply at all, because the potential for "judicial denigration" that concerned the Court in *Naranjo* does not exist in this action. *Naranjo* found the potential for disrespect of foreign legal systems arose because the injunction imposed a New York court's application of New York law regarding the enforceability of a foreign judgment on every other country in the world—an evaluation that each potential enforcement jurisdiction has an interest in making for itself. *See* 667 F.2d at 244. Should the district court enter the injunction Chevron seeks here, it will *not* be imposing New York policies and rules on the enforcement of foreign judgments on other tribunals—it will be enjoining, after a trial on the merits, criminals and tortfeasors from furthering or benefitting from their wrongdoing under U.S. law.

posed "Fraud Injunction" would preclude further acts of "fraud or conduct in furtherance of fraud," which here consist of, among other things, acts to "monetize or profit from the judgment." Tyrrell Decl., Ex. 6 at 4. Likewise, the proposed "RICO Injunction" is focused on prohibiting Defendants from "committing, aiding, abetting, inducing, directing or operating an enterprise through any acts of racketeering activity, as defined in Section 1961 of Title 18 of the United States Code, including but not limited to any acts of extortion, wire fraud, mail fraud, obstruction, and money laundering." *Id.* at 3. Such an injunction would be lawful, if the district court were to issue one. *See, e.g.*, *Carson*, 52 F.3d at 1183–84 ("[A] district court has broad discretion to enjoin possible future violations of law where past violations have been shown . . . ." (quotation marks and citation omitted)). That the illegal activity might involve attempts to enforce or monetize a fraudulent foreign judgment does not preclude a U.S. court from enjoining continuing violations of U.S. law being committed by defendants over whom it has jurisdiction.[6]

    At bottom, Defendants' position is that this Court in *Naranjo* effectively conferred absolute immunity on those who resort to bribery, fraud, and racketeering to obtain a multi-billion dollar foreign judgment and then seek to use it as a

---

[6]    Defendants ignore that Chevron's proposed RICO injunction includes equitable remedies, such as divestment, that district courts are expressly authorized to issue to "prevent and restrain" further RICO violations. *Compare* 18 U.S.C. § 1964(a) (authorizing orders that require a "person to divest himself of any interest, direct or indirect, in any enterprise"), *with* Tyrrell Decl., Ex. 6 at 3 ("Defendants . . . must divest themselves of any interest, direct or indirect, in the enterprise . . . .").

club to extort a payoff from a U.S. defendant. *See* Mot. at 7 ("A New York court finding liability and awarding damages for asking a foreign court to assess the validity of the Judgment in an enforcement action cannot be reconciled with *Naranjo*."). But if Defendants' proposed rule were the law, it would shut the courthouse doors to victims of extortionate and fraudulent schemes merely because those schemes involve, in part, leveraging foreign judgments.[7] And Defendants' proposed rule would mean that the United States' substantial interest in enforcing its own laws must take a backseat to the purported interests of foreign nations in allowing their courts to serve as corrupt vehicles of fraud and extortion. *Naranjo* obviously did not adopt any such rule.

## C.    The Court Should Deny Defendants' Latest Attempt at Delay.

Defendants' efforts to delay the trial on Chevron's claims reflect their lack of evidentiary response to the voluminous proof of their fraudulent scheme to extort Chevron. *See, e.g.*, Dkt. 122-14 at 4, 26; RA1035. In the district court, they have filed a series of baseless motions to extend and delay a variety of deadlines, and recently sought a stay of the trial and all other proceedings below pending the Court's disposition of this petition. SDNY Dkt. 1370.[8] The district court found that no stay was warranted, and that the motion "represent[ed] a radical change in

---

[7]    Damages remedies would not be sufficient, for instance, if the proceeds from Defendants' fraudulent scheme were funneled into an offshore trust.

[8]    "SDNY Dkt." references are to the docket in No. 11-cv-691 (S.D.N.Y.).

defendants' nominal position (though it is entirely consistent with a years-old strategy of delay wherever possible), and comes far too late." SDNY Dkt. 1407 at 1. The court elaborated:  "The possibility of an adverse result on Chevron's affirmative fraud claims that defendants fear might impair their lawsuits in other countries is not a reason to stop the trial, even briefly." *Id.* at 3.

Defendants now seek to circumvent the district court's "broad discretion" regarding trial management.[9]  But a party seeking to stay a lower court's proceedings "bears a difficult burden."  *United States v. Private Sanitation Indus. Ass'n*, 44 F.3d 1082, 1084 (2d Cir. 1995).  And Defendants' motion satisfies none of the relevant factors.  *See Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 100 (2d Cir. 2012) ("Indeed, so heavy is the defendant's burden in overcoming a district court's decision to refrain from entering a stay that the defendants have pointed to only one case in which a district court's decision to deny a stay was reversed on appeal, and that case was decided more than thirty years ago.").

### 1.    A Stay Would Harm the Public Interest.

Defendants claim that without a stay of the trial, the public will lose confidence in the judiciary itself.  *See* Mot. at 13–14.  But it is only Defendants and their agents, not the "public" at large, who have questioned the district court's im-

---

[9]    A district court's decision whether to stay proceedings is subject to its "broad discretion." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004).

partiality and motives in this action.  In fact, they have pilloried the district judge in an escalating succession of audacious press releases—accusing Judge Kaplan of being "open . . . for Chevron's business," "at Chevron's beck and call," a "Chevron lackey," in a "conspiracy" with Chevron, "corrupt," "biased," "racist," and a "zealot[]."  Dkts. 58-4 at 5–6, 58-5 at 4, 58-6, 58-7, 122-16, 122-23, 122-16, 122-23.  A stay would reward Defendants for this improper strategy, and encourage other litigants to engage in and promote their own rhetoric as "evidence" justifying stays and reassignments.  Defendants may believe, in view of the evidence against them, that they have nothing to lose from such tactics, but the federal courts have much at stake in ensuring that such tactics result not in reward, but in rebuke.  *Ransmeier v. Mariani*, 718 F.3d 64, 69–70 (2d Cir. 2013) (sanctioning attorney who had "engaged in a pattern of vexatious and duplicative filings, targeting opponents and judges with rude language, and asserting spurious legal positions," as well as filing a frivolous motion designed "to air false and egregiously insulting views about the district court without any good-faith belief that the Motion would be successful").

Moreover, the supposed threat to international relations that Defendants claim is posed by the denial of a stay is also nonsense.[10]  As explained above, Chevron seeks, but may never obtain, an order from a United States court that

---

[10]    In fact, the Ecuadorian appellate court itself decided to "stay[] out of these [fraud] accusations, preserving the parties' rights to . . . continue the course of the actions that have been filed in the United States of America."  A1356.

13

would be enforceable against defendants over whom the court has properly exer-

cised jurisdiction.  The proposed order would enjoin Defendants' efforts to profit

from their scheme and would attach any proceeds collected in furtherance of their

RICO violations and fraud.  *See supra* Section B.  Chevron is not asking a United

States court to infringe on the sovereignty of any foreign court or government, or

to issue an order directing those foreign bodies' behavior in any way.[11]

Defendants' stay motion represents yet another manifestation of their

avowed delay and obstruction strategy (*see* SDNY Dkts. 48-21, 496-5), which may

advance their foreign enforcement efforts but does not serve the public interest.

Moreover, the district court has noted that delaying this long-scheduled trial would

severely disrupt its trial calendar, which includes two alleged terrorism cases set to

begin in January and April 2014.  Tyrrell Decl., Ex. 1 at 21 n.69.

Defendants' utterly unsubstantiated claims of a lack of resources do not pro-

vide a basis for a stay.  Just last week, the district court noted that "Mr. Donziger

yet again has failed to submit any competent evidence or affidavits supporting his

claim of 'limited resources,' despite the Court's repeated invitations that he do so"

and that "filings from actions in Florida courts reveal that Mr. Donziger was enti-

---

[11]  If, in undertaking its own recognition analysis, a foreign court wishes to take
into account the factual findings underlying any future judgment to be issued by a
federal court in the United States—namely that Defendants violated RICO and re-
sorted to fraud, bribery, and corruption to secure the $19 billion Ecuadorian judg-
ment—it would be that foreign court's prerogative to do so.

14

tled to receive nearly $2 million from family trusts within the last year."  SDNY

Dkt. 1436 at 7 n.16.  And the plethora of motions initiated by Defendants in this

Court and below belies their claims of a lack of resources.[12]

Defendants have long claimed to be overwhelmed victims both in courts and

in the media, in an attempt to gain tactical advantages.  They have done so repeat-

edly before this Court.  At his first appearance before this Court three years ago, in

November 2010, the LAPs' counsel told the panel hearing Defendants' stay motion

that they could not timely prepare a privilege log because "[t]here is no money on

this side of the case[]," even though a litigation funder had recently agreed to in-

vest between four and fifteen million dollars in the case.  Mastro Decl., Ex. 3.[13]

Defendants are represented by an international law firm in this Court and by

prominent counsel in their foreign enforcement actions—whom they have de-

---

[12]  *See* Dkts. 52, 75, 160; *Chevron Corp. v. Naranjo*, No. 11-1150 (2d Cir.), Dkts. 45, 48, 295, 378, 440, 537, 608; RA1047 n.6 (district court observing that Defendants and the LAPs' counsel Patton Boggs had filed 39 substantive motions in this case as of May 17, 2013); Mastro Decl. ¶ 2 (Defendants have filed 21 substantive motions since May 17, 2013).

[13]  Mr. Tyrrell also told the Court:  "Understand, we [Patton Boggs] only came into this case last Thursday," and "[w]e're doing the very best we can to get up to speed."  Mastro Decl., Ex. 4 at 18, 20.  In reality, however, that firm had been directing litigation strategy for at least six months.  Mastro Decl., Ex. 2.  According to Donziger, the "fundamental principle of [that] strategy as outlined by Jim [Tyrrell]" was to "appeal on the theory that we gain a greater advantage by fighting them on everything, and tying them up, than in conceding any one thing even if we expect to ultimately lose that one thing down the road" and to "fight hard on all fronts all the time and concede nothing, buy as much time as possible."  SDNY Dkts. 48-21, 496-5; *see also* RA850–51.  The instant motion is more of the same.

scribed as a "dream team" that is not suffering from lack of funds. RA975–76 (LAPs' Canadian lawyer boasting earlier this year that he was part of "one of the most powerful teams of litigators ever assembled" and denied that they were short of funds). Instead, they have admitted in the press that they have decided for strategic reasons to pull back from funding the litigation in New York. RA1037 ("[W]e are scaling back in New York to focus on the main issue: enforcing the $19 billion judgment around the world.").

### 2. Defendants Will Not Suffer Irreparable Injury Absent a Stay.

Defendants argue they will be irreparably harmed absent a stay of the trial due to the "needless expenditure of resources litigating issues that may well disappear upon resolution of this Petition." Mot. at 17. But the Supreme Court has held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (citation omitted).[14]

Defendants also fail to identify what, if any, litigation costs might be avoided if this Court grants their petition. They offer only a vague assertion that things somehow "will be different" if this Court vacates the four orders challenged in the-

---

[14] In any event, the district court has taken a number of actions that, individually and collectively, lessen Defendants' litigation burdens for the upcoming trial. For example, the District Court *sua sponte* denied much of Chevron's recent motion for summary judgment, most of Chevron's motions *in limine*, and a portion of Chevron's motion for bifurcation. *See* Dkt. 158.

se proceedings.  Mot. at 18.  But as the district court has explained in detail, "[T]he scope and duration of the forthcoming trial would not be affected substantially even if the orders of which defendants claim were vacated entirely.  The effect of such an outcome would be that the collateral estoppel defense would be out of the case."  Tyrrell Decl., Ex. 1 at 15.  And the collateral estoppel defense "would be effectively out of the case as well if defendants simply elected not to press it at trial, which of course is their option."  *Id*. at 15 n.50.  Regardless of what happens with the collateral estoppel defense, "Chevron's claims for damages and other relief based on the alleged extortionate and fraudulent scheme would remain."  *Id*. at 15; *see also id*. at 15 n.51 ("[Defendants] are going to have to try substantially the same case regardless of the outcome in the Court of Appeals.").[15]

Defendants cite only a few cases to support their "prejudice" argument, none of which has any bearing on these proceedings.  *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), addressed the unique interplay of a criminal matter and a civil

---

[15]  With respect to Chevron's statements in its Brazilian pleading with which Defendants take issue (Mot. at 17 n.17), Defendants present a misleading account by combining two disparate portions of that lengthy pleading.  Chevron properly argued to the Brazilian court that the United States is the only correct venue for a recognition action, because it is only there that the named judgment debtor, Chevron Corporation, is located.  Mastro Decl., Ex. 5 ¶ 6.  Contrary to Defendants' implication, Chevron's argument had nothing to do with the district court's preliminary injunction decision, but instead relied on principles of Brazilian law.  *See id*., ¶¶ 51–63.  Furthermore, Chevron did not cite the district court's decision as any sort of binding authority, and cited it properly, consistent with Brazilian practice, as one of ten decisions from U.S. courts that had made fraud findings in connection with 28 U.S.C. § 1782 discovery and other proceedings.  *Id*., ¶ 203.

matter occurring in parallel, where civil discovery rules may have allowed a civil plaintiff access to materials expressly denied to him by criminal discovery rules in his capacity as a criminal defendant. *Id.* at 487–88. *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493 (D.C. Cir. 1983), concerned a potential stay of district court proceedings to enforce a judgment (as opposed to staying a trial) pending the appeal of that judgment in another court. *Id*. at 1498–99. *Weintraub v. Board of Ed. City of New York*, 489 F. Supp. 2d 209 (E.D.N.Y. 2007), involved a stay pending an interlocutory appeal where the outcome of the appeal could require a complete retrial. *Id*. at 222. And finally, in *Unionbancal Corp. v. United States*, 93 Fed. Cl. 166 (Fed. Cl. 2010), the court granted a stay "pending the resolution of an appeal in a separate case that addresses a similar issue." *Id*. at 167.

### 3.    Chevron Would Be Prejudiced by a Stay.

By contrast, an indefinite stay of the proceedings below would prejudice Chevron, which is entitled to proceed with the long-scheduled trial on the merits of its claims. *See Citibank, N.A. v. Hakim*, No. 92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993) (denying motion to stay where plaintiff "may face substantial prejudice from a stay because it will be denied its right to speedy . . . resolution of this dispute"); *In re Albert*, No. 99-31520, 2002 WL 1432663 (Bankr. S.D.N.Y. June 20, 2002) (denying motion for stay because "substantial prejudice and harm will occur to the plaintiffs if the case does not progress toward

trial"). Indeed, this Court has previously denied a stay of a RICO case pending appeal because "the interests of the government and the public in terminating the [misconduct] by criminal conspirators weigh heavily against granting a stay." *Private Sanitation Industry Ass'n*, 44 F.3d at 1084.

Defendants waited nearly six months after filing their writ petition—which itself challenges orders in some cases many months old—to assert it as a basis to delay the trial. The district court identified this delay as a reason to deny the requested stay—a finding that Defendants refer to as, "damned if we do, damned if we do not." Mot. at 19. According to Defendants, they did not seek a stay earlier because they "attempted to follow the most reasonable and non-prejudicial course possible." *Id*. at 20. But over the past few months, Defendants have resorted to every conceivable tactic to delay and disrupt the trial, asserting multiple requests for stays and continuances for a variety of reasons.[16] Yet not one of those prior requests even mentioned the writ proceedings pending in this Court. Accordingly, the district court was well within its discretion to label Defendants' latest stay request as "A Last Minute Ploy that Comes Too Late." Tyrrell Decl., Ex. 1 at 20;

---

[16] On June 1, Donziger, in a motion that the LAPs joined, moved to stay all litigation for three months on the basis that that he needed time to, among other things, get up to speed and find substitute counsel. SDNY Dkts. 1211, 1209. On June 7, Donziger moved for a stay of discovery until the court resolved certain discovery motions. SDNY Dkt. 1221. On August 19, Defendants moved to adjourn all deadlines for 30 days on the basis that they could not meet various pre-trial deadlines. SDNY Dkt. 1353. On September 11, Donziger moved to stay all proceedings until Chevron decided whether to waive damages against him. SDNY Dkt. 1415.

*see also id.* ("[T]he mandamus petition was filed on March 5, 2013. To whatever extent that petition held the potential [to] substantially to affect the scope of this case, that was as true on March 5 as it is today.").

### 4.    Defendants Are Unlikely to Prevail on the Merits.

Mandamus is "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (quotation marks and citation omitted). As Chevron explained in its Answer, there are numerous reasons why mandamus should not issue, including: (a) each of the four interlocutory orders challenged here is reviewable on appeal; (b) Defendants' petition is untimely; (c) the district court fully carried out the *Naranjo* mandate by dismissing Chevron's severed declaratory judgment action immediately on remand; (d) Defendants themselves put the Ecuadorian judgment at issue by asserting it as a basis for their collateral estoppel defense; (e) the district court was well within its discretion to deny Defendants' subsequent bad-faith attempts to withdraw the affirmative defense of collateral estoppel; and (f) the district court's order denying certification under 28 U.S.C. § 1292(b) did not and could not "manufacture" a new claim for Chevron to "set aside" the judgment. *See generally* Dkt. 122-1.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

Dated:  September 24, 2013                Respectfully submitted,
                                          /s/ Randy M. Mastro           

Gibson, Dunn & Crutcher LLP
Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Respondent*
*Chevron Corporation*